FREEMAN v. LOWELL SPECIALTY CO.

1. APPEAL AND ERROR—DEMURRERS—MULTIFARIOUSNESS.
   A demurrer to a bill in equity on the ground of multifariousness is special and no appeal lies from an order overruling it.

2. PARTNERSHIP—ACCOUNTING—FRAUD—CORPORATION.
   Where complainant and a partner were the owners of a valuable patent which they desired to manufacture and promote, and in order to do so interested two others in the business under a partnership agreement providing for a division of profits, and where two of the partners, after running the business for a time and buying out one of the original owners, proceeded to organize a corporation of the same name as the partnership, transferring to it the patent rights, business, good will, machinery and other assets of the copartnership, without complainant's knowledge or consent, and where they continued the business, making a profit and increasing its value by the use of the patent, complainant was entitled to an accounting and to recognition of his interest in the corporate assets and business.

3. SAME—PATENTS—LICENSE TO MANUFACTURE.
   Patent rights may be held in partnership like other property, the mutual rights and liabilities of the partners being determined by the agreement between the parties and the general law of partnership.

Appeal from Ionia; Davis, J.   Submitted October 17, 1912.   ( Docket No. 126.)   Decided March 20, 1913.

Bill by Alonzo O. Freeman against the Lowell Specialty Company and others for an accounting.   From a decree for complainant overruling a demurrer to the bill, said Lowell Specialty Company appeals.   Affirmed.

*Walker & Fitzgerald*, for appellant.

*R. A. Hawley*, for appellee.

McALVAY, J.   This is an appeal in chancery of the Lowell Specialty Company, one of the defendants, from an order overruling its demurrer.   The facts stated in the bill of complaint and admitted by the demurrer are somewhat complicated.   They will be as briefly stated as is possible for an understanding of the case.

On December 10, 1900, complainant and Clarence W. Parks, of the village of Lowell, Kent county, Mich., were the owners as copartners of a certain patentable invention of a new and useful sprayer, known as a fountain compressed air sprayer, for which there was then pending in the United States patent office an application for letters patent.   These parties, being desirous of engaging in the manufacture and sale of said sprayer, but not having the necessary funds for that purpose, entered into a contract in writing with Watts and Look, two of the defendants herein, to form a copartnership with them for that purpose, under the firm name and style of Lowell Specialty Company.   This contract reads as follows:

"This agreement, made this 10th day of December, 1900, by and between William A. Watts, Dexter G. Look and Clarence W. Parks, of Lowell, Kent county, Michigan, and Alonzo O. Freeman, of Ionia, Ionia Co., Mich-

igan, witnesseth: That the said parties hereto do hereby form and enter into a copartnership under the name and style of the Lowell Specialty Company for the period of the life of the patent hereinafter mentioned for the purpose of the manufacture and sale of the Fountain Compressed Air Sprayer and the Large Compressed Air Sprayer for fruit trees, invented by the said Clarence W. Parks and in which said Freeman now owns a one-half interest, and upon which invention application has been made for letters patent, which application is now pending, and for the manufacture and sale of any other article that may hereafter be invented and patented by said Clarence W. Parks upon the terms and conditions herein provided.

"Said Watts and Look are to furnish and contribute whatever funds and capital they may deem necessary to the proper conduct, handling and pushing of said business, and they are to have the full control and management of said business and of the manufacture and sale of said sprayer without interference or hindrance from said Parks and Freeman, or either of them; and they are to conduct and push the same as to them shall seem best; and it is expressly agreed that said Parks and Freeman nor either of them, shall make any contracts nor incur any obligations or do any business for or on behalf of said firm without the written consent of the majority of the interests of said firm upon the basis hereafter provided; and in case they, or either of them, disregard or violate this provision, their interests in said patents assigned to said firm shall be held by said firm to protect and reimburse it for any loss, liability or damage to which said firm shall be subjected on account, and their share of the profits to be applied to the same thereof; and as between the parties hereto said Watts and Look shall be solely responsible for the payment of all obligations incurred by said company; said Parks and Freeman are to furnish and contribute said inventions and patents, and they are and hereby agree to assign to the parties hereto as members of said firm said patents when issued in proportion to their respective interests in the firm hereinafter designated; the interests of said parties in said partnership are to be and are hereby divided: William A. Watts, twenty-five and one-half per cent. (25½%); Dexter G. Look twenty-five and one-half per cent. (25½%); Clarence W. Parks twenty-four and one-half per cent. (24½%); and Alonzo O. Freeman twenty-four and one-half per cent.

(24½%); and the proceeds accrued upon said partnership and its business shall be divided as follows: (1) The operating expenses of every kind and nature made or incurred in the conducting of said business shall be paid; (2) the cost of building and fitting up an office in case the same shall be determined upon by said firm; (3) any salary or compensation to any of the copartners which may be hereinafter agreed upon and provided; (4) the moneys and funds contributed from time to time by said Watts and Look or so much thereof as shall not then be invested in stock, accounts or notes receivable shall be paid back subject to the agreement upon their part hereinbefore made to contribute such funds and moneys as they shall deem necessary for the conduct of such business; (5) after the payment of expenses and other moneys as herein provided, the profits remaining and accruing from said business shall be divided among the members of said copartnership in proportion to their respective interests therein, as hereinbefore specified, said profits to be ascertained and said division made at the close of each year's business and on or as near as may be the first of January of each year.

"It is agreed by said Clarence W. Parks that any inventions that he may make during the life of this agreement or such of them as said firm shall determine may be manufactured and sold by said firm, and he will assign to said Watts and Look at their request 51 per cent. of his right, title and interest in and to said inventions and the letters patent that may be granted therefor; and that the manufacture and sale of the same shall be carried on and conducted by said firm upon the same terms and conditions herein provided except that the said Alonzo O. Freeman is to have no interest therein; and that said Parks is to have 49 per cent. interest in said business and the profits thereof, and said Watts and Look fifty-one (51) per cent., and in all other respects the manufacture and sale of said new inventions are to be conducted in the same manner as herein provided for said sprayer. It is agreed, however, by said company, that they shall pay the necessary expenses for the making of the models and the obtaining of the patents for such of said inventions as they may choose to handle upon the terms aforesaid. And the said Alonzo O. Freeman does hereby expressly consent to the said Lowell Specialty Company manufacturing and selling said new inventions and conducting the necessary busi-

ness therefor under said name and style as herein provided, and waives all interest in or to that portion of said business or the proceeds thereof.

"It is expressly agreed that all differences and questions that may arise between the members of said firm or any of them with relation to this contract and the matters growing out of the same and the conduct of said business shall be governed and determined by a majority vote of the interests of the parties hereto, each member voting his interests upon the basis and according to the per cent. herein given; and it is further authorized that any of said parties shall have the right to authorize any other party hereto to act as his proxy in voting his interest upon such questions. And said Parks and Freeman, each for himself, do hereby give and grant to said company, its successors and assigns, the exclusive right to manufacture and sell said sprayers within the United States and every State, territory and part thereof, including Cuba, Porto Rico and the Philippines for and during the term of life of the patent or patents to be granted upon said invention, and of any patents that may be hereafter granted upon the same, or any improvement thereof, and the said Clarence W. Parks doth hereby give and grant to said firm a like exclusive right in such of said inventions hereinafter made and patents hereinafter obtained by him as said firm shall choose to manufacture as hereinbefore provided. Said Watts and Look reserve, and they are hereby given the right to discontinue and go out of the manufacture and sale of said sprayers and said other inventions and articles in any year at the time of the annual accounting and settlement provided for in this contract, and in case they shall determine so to do, then said Parks and Freeman and both of them shall be thereby released from this contract, and shall thereafter have the right to handle and dispose of and sell said sprayers and said patents as they may see fit, and said Watts and Look will thereupon reassign to them or either of them, their representatives and assigns, all right and title that they may have in and to said patent. Said Parks and Freeman to have a proportionate interest in any fixtures, buildings or property paid for out of the net profits of said company.

[Signed]
"WILLIAM A. WATTS,
"DEXTER G. LOOK,
"CLARENCE W. PARKS,
"ALONZO O. FREEMAN."

The parties, in pursuance of this contract, at once entered upon its execution as a copartnership according to its terms. Upon the application above mentioned by complainant and Parks, letters patent were issued to them December 3, 1901, and a copartnership interest in said letters patent was thereupon assigned and transferred by complainant and Parks to Watts and Look, according to the copartnership agreement. Watts and Look had the entire and sole management of the business of the copartnership, kept all the books in relation thereto, and had entire control thereof, rendering no account of said management and control or of the profits to complainant and Parks until June 30, 1903, at which time they claimed that, after payment of all costs, charges, and expenses of the management of the business, including a salary to each of them of $1,500, there was a net profit of $380; that complainant and Parks objected to the payment of salaries, but these defendants exacted the same from the concern against their protest.

On October 13, 1903, Clarence W. Parks, as was contemplated by the contract in writing made on that date between Watts, Look, and the complainant, withdrew from said copartnership, selling out his interest to defendants Watts and Look, and thereafter he ceased to be a member of said firm and to have any interest therein. This contract reads as follows:

"The agreement made this 13th day of October, 1903, by and between William A. Watts and Dexter G. Look, of Lowell, Michigan, and Alonzo O. Freeman, of Ionia, Ionia county, Michigan, witnesseth: That whereas said first parties are about to purchase from Clarence W. Parks, of Lowell, all of his right, title and interest in and to the copartnership known as the Lowell Specialty Company and in and to the patent of the Fountain Compressed Air Sprayer and the Large Compressed Air Sprayer mentioned in the annexed agreement, and all of his right, title and interest in and to certain other inventions and patents. And whereas the said Watts and Look are to continue the business of said Lowell Specialty Company under the

same name and style: Now, therefore, this agreement witnesseth that the said Alonzo O. Freeman, the second party hereto, doth hereby consent to the purchase by said Watts and Look of all rights, interests and titles of said Parks as aforesaid, and to the continuance of said business under the said name and style as aforesaid, and doth further consent to the manufacture or sale on commission or otherwise by said Lowell Specialty Company of other kinds and lines of articles and manufactures such as said Watts and Look shall from time to time see fit to add to or take on in said business of said company, without the participation or sharing by the said Freeman in the proceeds or profits of said company or the manufacture or sale of said articles, except that the said Freeman retains his interest in said patent of the Fountain Compressed Air Sprayer and in the patent therefor and of the profits and proceeds in the manufacture and sale thereof by said company to the same extent as provided for in said annexed contract of date of the 10th day of December, 1900. In witness whereof we set our hands and seals to the above written.

[Signed]   "WILLIAM A. WATTS.   [L. S.]
"DEXTER G. LOOK.   [L. S.]
"ALONZO O. FREEMAN.   [L. S.]"

After this agreement was entered into, said copartnership known as the Lowell Specialty Company, composed of complainant and the defendants Watts and Look, continued the manufacture and sale of these sprayers and built up a large business from which large profits accrued to said firm during the years ending June, 1904, and June, 1905; that the two defendants named had sole and entire management thereof and kept all the books relating thereto, but both of them since June 30, 1903, refused to account to complainant for his share in the profits of the business and have refused to permit him or any person for him to examine the books of the firm to see the condition of the business. Since that time they have also refused and neglected to pay him or any one in his behalf any money whatever as profits upon said business, and still refuse so to do, and they have made false statements

relative to the condition of said business, with intent to cheat and defraud complainant.

The bill of complaint further shows: That on June 24, 1905, without the knowledge or consent of complainant, and against his will when he became aware of the fact, defendants Watts and Look proceeded to organize and did organize defendant corporation known as the Lowell Specialty Company, of Lowell, Mich., and filed articles of association on that date with the secretary of State, as provided by law; that the business of said corporation, as expressed in its articles of association, among other things, was:

" To carry on a general manufacturing and mercantile business, including the manufacture and sale     *     *     * of sprayers     *     *     *     and to purchase, own or lease any and all real estate, buildings, plant, machinery, offices, and other property proper for the conduct of said business."

This business was to be carried on and its principal office kept at the village of Lowell, Kent county, Mich. Its capital stock was $40,000, divided into shares of $10 each, of which defendants Watts and Look each owned and held 1,100 shares, being a majority of such stock. The amount of the capital stock paid in, as stated in its articles of association, was $20,850, of which $1,800 was cash and $19,050 in other property, consisting of real estate valued at $5,500, patent on cream separators, valued at $2,200, and "machinery, tools, fixtures, benches, office furniture as per inventory of the Lowell Specialty Company (a copartnership), of Lowell, Michigan, including the good will, at the value of $11,350." The appellee further alleges that this corporation, its officers and agents, well knew and were chargeable with knowledge of the fact of the copartnership agreement between complainant and Watts and Look, and of complainant's rights and interest in said copartnership and in the business of manufacturing said Fountain Sprayer,

and the profits arising therefrom, and in the patent; nevertheless the corporation and defendants Watts and Look immediately commenced, and ever since have continued, the business of the manufacture and sale of these sprayers and have derived large profits therefrom and still continue so to do; that a large part of the business of the defendant corporation and a large portion of its profits are derived from such manufacture and sale of these sprayers.

The bill further shows that, since the organization of the corporation defendants Watts and Look have entirely abandoned said copartnership known as the Lowell Specialty Company, against the will and without the consent of complainant, entirely ignoring his rights under the copartnership contract, and claiming that he has no right as against them under said contract, and have refused to assign and transfer to him the patent for the said Fountain Compressed Air Sprayer, as provided in the copartnership contract, and have refused, and still continue to refuse, to account to him in any wise for the profits of the manufacture and sale of such sprayers by the corporation or to give him any information relative to the profits, claiming that he has no right to any information in regard thereto; that he has from time to time made application to the officers and agents of said corporation for information as to the number of such sprayers manufactured and sold and the profits accruing to it therefrom, but that he has always been refused any information in that regard and any opportunity to examine the books of said corporation to ascertain such facts.   He alleges that, if all of these defendants were to account for their receipts in respect to said copartnership transactions and all the profits since the commencement of such copartnership, it would show that large profits had been made during the years 1903, 1904, and 1905, and during each year since the organization of said corporation from the manufacture and sale of these sprayers; that a large balance is due

complainant from all the defendants for his share of said profits.

The bill prays for an accounting of all copartnership dealings and transactions from its commencement in respect to the manufacture and sale of such sprayers with the defendants Watts and Look, and also with the defendant corporation, the Lowell Specialty Company, since its incorporation, and that they be decreed to pay him whatever an accounting between these parties will show should be paid to him. There is also a prayer for an injunction restraining the defendants, and each of them, from manufacturing, selling, or offering to sell any such sprayers, or sprayers of like character, and from selling, disposing of, or assigning or attempting to sell and dispose of, or using or attempting to sell, dispose of or use, the letters patent for said Fountain Compressed Air Sprayer or any interest therein. There is also a prayer for general relief.

All of the defendants to the bill of complaint filed separate demurrers which were overruled. The Lowell Specialty Company alone appeals to this court from the order overruling its demurrer. Such demurrer is based upon two principal grounds: *First*, that the bill is multifarious; and, *second*, that the bill discloses upon its face that the defendant corporation, the Lowell Specialty Company, manufactured and sold such sprayer, if not as a part owner, as licensee in law and in fact of the co-owners of the sprayer patent Watts and Look, and that as such licensee said defendant is not liable to account to complainant, the other co-owner of said patent.

A demurrer on the ground of multifariousness is special. The statute which made provision that an appeal could be had from an order overruling a demurrer was limited in terms to orders overruling general demurrers, and therefore no appeal lies from an order overruling a demurrer for multifariousness. *Kerr* v. *Rupp*, 144 Mich. 269 (107 N. W. 1059); *Case* v. *Longyear*, 168 Mich. 434 (134 N. W. 459); *Graham* v. *Graham*, 171 Mich. 307 (137 N. W. 153).

The remaining contention upon this demurrer is that this defendant is not liable to account to complainant because the manufacture and sale of these sprayers by it, if not made as a part owner, of the patent, was made as licensee in law and in fact of Watts and Look, who were part owners.

In considering this contention the fact must be kept constantly in view that all of the material allegations contained in the bill, which are well pleaded, are admitted by this demurrer. Therefore no further investigation of the case is necessary than to ascertain whether or not a cause of action against these defendants is stated in the bill of which a court of equity would take cognizance.

We find early in the bill of complaint the statement that on the 10th day of December, 1900, complainant and Clarence W. Parks were the owners as copartners of a certain patentable invention of a new and useful sprayer known as a fountain compressed air sprayer. It appears that this is the sprayer upon which these parties later received letters patent, and the sprayer and letters patent are both the subject-matter of the contract which was entered into on that date. In that contract, which was a contract of copartnership, to be carried on, under the name and style of the Lowell Specialty Company, for the period of the life of the patent, upon which an application was pending, complainant and Parks agreed to furnish and contribute such invention and patent to said copartnership and to assign to the parties as members of such copartnership such patent when issued in proportion to their respective interests, which were designated as follows: William A. Watts, $25\frac{1}{2}$%; Dexter G. Look, $25\frac{1}{2}$%; Clarence W. Parks, $24\frac{1}{2}$%; and Alonzo O. Freeman, the complainant, $24\frac{1}{2}$%. That the patent issued and a copartnership interest in the letters patent was duly assigned and transferred by complainant and Parks to the defendants Watts and Look, in accordance with the terms and provisions of the copartnership agreement, Watts and Look reserving the right to withdraw in any year at the time of the annual

accounting and agreeing that if, as provided in the contract of copartnership, they desired to withdraw, they would reassign to the complainant and Parks, or either of them, their representatives or assigns, all the right and interest they might have in and to said patent.

The relations of Parks and complainant toward each other in this patent, which was issued to them, was that of copartners, and as such copartners they assigned and conveyed to defendants Watts and Look a partnership interest as members of the copartnership, known as the Lowell Specialty Company, composed of these four individuals. It further appears by the later agreement of October 13, 1903, that complainant consented to the purchase by defendants Watts and Look of the interest of Parks in and to the copartnership known as the Lowell Specialty Company and his interest in and to the patent for the sprayer; Watts and Look to continue the business under the same name and style, the complainant to retain his interest in the patent and in the profits and proceeds arising from the manufacture and sale of sprayers by the copartnership, as provided by the original partnership agreement of December 10, 1900, annexed to the second agreement. Thereafter Parks ceased to be a member of the copartnership or to have any interest in the business and profits arising therefrom. By this transfer Watts and Look acquired the interest of their copartner Parks in the patent, and thereafter there existed between them and complainant the same relationship as formerly existed between complainant and Parks in their relation to the patent and their rights under it, thereby emphasizing their obligations and duties towards complainant as copartners.

Later, without the knowledge or consent of complainant, defendants Watts and Look organized this corporation, of which they took a controlling interest. They gave it a name the same as the name of the copartnership of which they were members. In the articles of copartnership it is stated that the capital stock paid in was the sum of $25,850, and this defendant corporation, among

other things, received "machinery, tools, fixtures, benches, office furniture as per inventory of the Lowell Specialty Company (a copartnership) of Lowell, Michigan, including the good will, at the value of $11,350." All of this property, which is more than half of the entire amount of the capital stock paid in, belonged to the copartnership. This demurring defendant will not be permitted to say that it had no knowledge of the existence of the copartnership, or that this property was not received by it and retained as its property.

This corporation was organized by two of the members of the firm, who had full knowledge of both of the contracts, and the corporation has taken, without authority, the copartnership property of great value, and has manufactured and sold these sprayers, which was a right which the copartnership possessed as partnership property, and profited thereby. Complainant had a valuable interest in all of this property taken over by the defendant corporation, and in the good will of the partnership and its business. Under this state of facts, we do not hesitate to say that complainant is entitled to an accounting with this defendant by reason of the fact that this patent as well as all the other property was partnership property, which came into the possession and use of this defendant, and for which no accounting has been made to complainant by any of the defendants.

It is well settled that:

"Patent rights may be held in partnership like other property, the mutual rights and liabilities of the partner being determined by the agreement of the parties and the general law of partnership." 22 Am. & Eng. Enc. Law (2d Ed.), p. 416; citing *Freeman* v. *Freeman,* 136 Mass. 260; s. c., 142 Mass. 98 (7 N. E. 710).

See, also, *Noble* v. *Joseph Burnett Co.,* 208 Mass. 75 (94 N. E. 289).

Complainant by his bill of complaint has stated a cause of action against all of the defendants, which entitles him to relief in a court of equity.

The order and decree of the circuit court in overruling this demurrer is affirmed, with costs. This defendant will be given the time provided for by rule to answer the bill of complaint.

STEERE, C. J., and MOORE, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.