SIMEON BOWEN *vs.* CLARENCE H. RICHARDSON, executor,
& others.

Bristol.   January 13, 1880;  June 29. — September 6, 1882.

If two executors have united in misusing funds in their hands, in the purchase of
land for their own benefit, and profits have arisen from such purchase, which
are held by one of them, or the title to the land stands in the name of one of
them, and it does not appear that the persons interested in the estate are de-
barred by acquiescence or otherwise from their right to avail themselves of the
advantage of the purchase, the other executor cannot maintain a bill in equity
for an account and for the payment to him of a proportionate share of the
profits.

BILL IN EQUITY against the executor, heirs and next of kin
of Stephen Richardson, for the settlement of a copartnership for
buying and selling real estate, which the bill alleged existed be-
tween the plaintiff and Stephen Richardson.

The case was referred to a master, the material parts of whose
report were as follows: "I find and report that there was a co-
partnership for buying and selling real estate between the plain-
tiff and Stephen Richardson, which began on or about April 1,
1862, and terminated March 1, 1877, by the death of said Ste-
phen Richardson.    There were no written articles of copartner-
ship between the parties, but it was verbally agreed between
them that they should divide the profits and losses equally be-
tween them, and that whenever one of the parties advanced the
consideration money for a purchase of land, he should be allowed
interest thereon, and the record title should be in his name.    I
find and report that the Capron lot, so called, the record title to
which, on said March 1, 1877, was in said Stephen Richardson,
was the property of said plaintiff and said Stephen Richardson
as copartners aforesaid; that the consideration money for the
Capron lot, which was the last purchase of real estate on copart-
nership account, was paid, as stated in the amendment to the
plaintiff's bill, which statement is as follows: ' The consideration
was advanced in fact by said Richardson in the sum of $1700,
then in his hands, belonging to an estate of which said Rich-
ardson and the plaintiff were joint executors, and for which
said Richardson gave the plaintiff his promissory note, payable
to the order of said executors, which said note said Richardson

thereafterwards, namely, on September 1, 1876, renewed for the principal sum, which has never been paid, but now remains in the hands of the plaintiff as surviving executor.'

"I find and report that the consideration money for the Capron lot has never been repaid to the said Stephen Richardson or his executor, but that the interest on the same was paid up to September 1, 1876. There was no memorandum in writing as to the Capron lot signed by said Stephen Richardson, and no declaration of trust, so signed, was produced in evidence. But there was an item for $201 profits on the Capron property, which was allowed in a settlement between the plaintiff and said Richardson. And said Richardson gave the plaintiff a writing containing a statement of the rents received from the Capron property and the expenses incurred on said property.

"I find and report that, upon the final settlement of the copartnership affairs, there should be allowed and paid to the defendants, out of the plaintiff's share of the copartnership property, the sum of $850, being one half of the consideration money for the Capron lot, and interest thereon from September 1, 1876, to the date of final settlement, according to the agreement of the copartners, the said Stephen Richardson having paid the consideration money for the Capron lot as hereinbefore stated. And in case the plaintiff's share of the copartnership property shall be insufficient to pay said sum, then the defendants shall have a claim against the plaintiff to the extent of such deficiency. The said Stephen Richardson and his representatives have been in possession of the Capron lot since the settlement of September 1, 1876, taking the rents and profits. I find and report that they have received as rents from the Capron property, from September 1, 1876, to December 1, 1878, the sum of $648."

The material exceptions filed by the defendants to the master's report were as follows:

"First. It appears by the master's report and the amendment to the plaintiff's bill in connection with said report, and referred to therein, that the Capron lot was bought with funds, in the hands of Stephen Richardson, belonging to an estate of which the plaintiff and said Richardson were co-executors, Stephen Richardson giving at the time only his note to said co-executors for the amount so taken; and said transaction does not appear

to have been assented to or ratified by any other person or persons interested in said trust estate than said co-executors. The defendants should not, therefore, be held to account in this suit with the plaintiff for the said Capron lot, or the rents and profits thereof.

"Second. Because it appears by the master's report, and the amendment to the plaintiff's bill, referred to in said report, that the Capron lot was not bought with partnership funds, and that no memorandum in writing, signed by Stephen Richardson, or declaration of trust so signed, was produced in evidence, relating to or including this lot. The defendants should not, therefore, now or on final settlement, be charged with the value of this lot, or with the rents and profits thereof, or be held to account, in this suit, with the plaintiff as to either."

The case was heard by *Lord,* J., on the master's report and the exceptions thereto, and reserved for the consideration of the full court.

If, upon the foregoing facts and exceptions, the plaintiff was entitled to a sale of the Capron lot, as copartnership property, a division of the proceeds of such sale, and a division of the rents and profits from that lot, a decree was to be entered accordingly; otherwise the Capron lot, and the rents and profits accruing therefrom, were to be omitted from the account between the parties.

*E. Ames,* for the plaintiff.

*J. M. Gould,* for the defendants.

C. ALLEN, J. By the plaintiff's averments in his bill, as amended, and by the master's report, it appears that the consideration paid for the lot of land now in controversy was advanced by Stephen Richardson from funds in his hands, belonging to an estate of which he and the plaintiff were joint executors, and for which Richardson gave to the plaintiff his promissory note, payable to the order of said executors; and that said note has never been paid, and now remains in the hands of the plaintiff as surviving executor. The defendants are the executor of the will of Richardson and his next of kin; and, in an exception to the master's report, they set forth that this transaction does not appear to have been assented to or ratified by any other person or persons interested in said trust estate than said co-executors; and,

in the brief submitted in their behalf, the grounds are taken that the act of the co-executors was fraudulent, and that the plaintiff cannot have personal relief in equity, whatever may be his rights as surviving executor; that no disinterested person representing the trust estate is before the court as a party; and that the defendants should not be required to perform the nugatory act of accounting with the plaintiff, when both the plaintiff and the defendants can be again called immediately to account by the beneficiaries.

Without considering other grounds of defence, we are of opinion that the above grounds must prevail, and that the plaintiff is not entitled to the aid of a court of equity to enable him to avail himself, for his own personal benefit, of the profits arising from the purchase of the lot of land in question.

The rule is general and fundamental, that no person holding trust funds can be allowed to derive any personal gain or advantage, either directly or indirectly, from the use thereof, but he must manage them with a single eye to the advantage of the trust estate; and, if he assumes to use them in any manner for his own benefit or in his own business, he must account for all the profits arising from such use, if profits are made, or for the principal and interest, in case of loss. The persons interested in the trust estate have the option of taking the profits, or of taking interest. This rule is applicable to every kind of fiduciary relation: to executors, administrators, trustees, guardians, directors of corporations, and all persons who hold funds in trust for others. It is also applicable to every mode in which such trustees may either directly or indirectly seek to derive a personal gain or advantage from the use of trust funds, whether by using the same in their personal business, or by treating the same as a loan to one or more or all of themselves, either with or without security, or to their partners, or to a firm of which they are members, or otherwise. Whatever form the transaction may assume, the salutary rule must be enforced which forbids them from reaping a personal profit from the method which they adopt of investing or managing the trust estate. The cases are numerous in which these doctrines have been applied, and approved text-books contain frequent repetitions of them. It will be necessary to refer to only a few of each. *Townend*

v. *Townend,* 1 Giff. 201, 212. *Wedderburn* v. *Wedderburn,* 22 Beav. 84, 100. *Stickney* v. *Sewell,* 1 Myl. & Cr. 8. *Heathcote* v. *Hulme,* 1 Jac. & W. 122, 131. *Norris's appeal,* 71 Penn. St. 106, 125, 126. *Shaler* v. *Trowbridge,* 1 Stew. (N. J.) 595, 602. Wms. on Executors (6th Am. ed.) 1841, 1842, and notes *k, m, o.* Lewin on Trusts (7th ed.) 253, 254, 298, 299, 312. Perry on Trusts, §§ 127, 128, 429, 432, 454, 464.

These doctrines are applicable to the present case. By using the funds in their hands for the purchase of real estate, the executors became responsible in their fiduciary or official capacity for all the profits which might arise from such purchase. Upon the facts alleged by the plaintiff, and urged in defence by the defendants, it is the duty of both the plaintiff and the defendants to give to the estate which furnished the purchase money the benefit of the purchase. The beneficiaries in that estate have the option to take the profits, or to take interest on the money. It does not appear that they have renounced this option, or elected to take the interest merely. Under this state of things, the plaintiff has no equitable title to a share in these profits. He can only establish such title by showing affirmatively such an election by the beneficiaries, or such acquiescence by them in the transaction as amounts to such an election. From the tenor of the defendants' argument, it is to be presumed that they intend to make the proper appropriation of the profits of this purchase, as soon as they are advised by this court that they can safely do so. But, however this may be, where two executors have united in misusing the funds in their hands, in the purchase of land for their own benefit, and profits have arisen from such purchase, which are held by one of them, or the title to the land stands in the name of one of them, and it does not appear that the persons interested in the estate are debarred by acquiescence or otherwise from their right to avail themselves of the advantage of the purchase, the other executor cannot maintain a bill in equity for an account, and for the payment to him of a proportionate share of the profits.    *Decree accordingly.*