SARAH R. FREEMAN, administratrix, *vs.* BENJAMIN S.
FREEMAN.

Bristol.    Oct. 28, 29, 1885. — June 29, 1886.   FIELD & C. ALLEN, JJ.,
absent. ·

A surviving partner, who has bought all the assets of the partnership except letters
patent for a product, and who uses the patent in the manufacture of such pro-
duct, against the objection of the administrator of the estate of the deceased
partner, is liable, upon a bill in equity by the administrator for an account, for
one half of the profits of the manufacture and sale of such article, less all costs
and expenses incurred therein by the surviving partner, and a fair allowance for
manufacturer's profits ; but the administrator is not entitled to interest, except
from the date of filing his bill.

BILL IN EQUITY to settle the affairs of a partnership, not al-
ready adjusted between the parties, including letters patent and
other personal property, and for an account.    After the former
decision, reported 136 Mass. 260, the case was recommitted to
the master, the material parts of whose report, together with the
facts, appear in the opinion.    The case was heard by *C. Allen*, J.,
and reserved for the consideration of the full court ; such decree
to be entered as justice and equity might require.

*J. E. Maynadier*, for the defendant.

*H. J. Fuller*, for the plaintiff.

DEVENS, J.    When this case was last before the court, it was
held that a bill in equity might be maintained by the adminis-
trator of a deceased partner against the surviving partner, to
obtain a sale of the letters patent belonging to the partnership,
and for an account of the profits received by the surviving part-
ner from the use thereof since the dissolution of the partner-
ship.  *Freeman* v. *Freeman*, 136 Mass. 260.    The contract of
partnership implies an agreement that all the assets of the firm,
including letters patent as well as other kinds of property, shall
be used for the common benefit of all the partners, and super-
sedes the relation which the parties would otherwise sustain to
each other as owners together thereof.

By the decree of this court, the letters patent have now been
sold, under the authority of a master, who has also made his re-
port, under the order recommitting the matter to him, with a
direction " to inquire and report to the court the amount of net

income and profits from the manufacture and sale of said goods and the use of said letters patent," and, in taking said account, to make to the defendant "all just allowances for money and labor expended in carrying on the manufacture and sale of said goods." The master has reported in two forms, so as to show, first, the net income and profits from the manufacture and sale of the goods, embracing both the manufacturer's and patentee's profits; and secondly, the net income and profits derived from the use of the letters patent, or what he terms patentee's profits; one half of which entire profits, or of such patentee's profits, according to the rule which may be adopted, he deems the plaintiff entitled to recover. To each of these findings the defendant excepts, deeming the rule in either case to result in an exaggerated charge against him.

Upon the first theory, the master, having found the price at which the different varieties of ornamental chain (which was the patented article) were sold, has deducted the cost thereof, including in this, in addition to the actual cost of labor and material, "all other expenses of labor, use of capital, salesman, travelling expenses, office rent, insurance, in fact every expense necessary in carrying on the manufacture and sale of goods in the jewelry business." In addition to what is embraced in the cost of the chains, as thus stated, he has added six per cent on the sales as a reasonable compensation to the defendant for his personal services in conducting the business. The cost of all the goods manufactured and sold, as thus ascertained, being deducted from the price at which they were sold, he has allowed to the plaintiff one half thereof, as her share of "the net income and profits of the manufacture and sale of the goods, and the use of the letters patent" from January 1, 1879, to the date of sale of the letters patent, which was the time to be covered by the account. This sum is found to be $19,676.85. This finding does not appear to do entire justice to the defendant. Although interest upon his capital and a reasonable sum for his personal services are included in the expenditures, yet his capital was at risk, his business energy and skill were taxed alike in the manufacture of the goods and the enterprise with which their sale was pushed; and he was entitled to a fair and reasonable profit in that business which he thus controlled and carried on. Certainly

no one would embark in a business without an expectation of this, and, when successfully conducted, he should be entitled to it as against others, who, even if they had a valuable interest, took no active part therein. Nor should he be deprived of this, even if those who had such valuable interest, by reason of their ownership in or control over a patent used in the business, objected thereto, provided that they were properly compensated for the use of their patent and the profits made thereby.

It is found by the master, that twenty per cent is "the average, usual, and customary profit made by manufacturers of unpatented articles of jewelry." This profit might reasonably have been expected by the manufacturer in any business of jewelry manufacture, if carefully conducted; and it is in evidence that this was so conducted, irrespectively and independently of the advantage derived from the right to use patents. It may be claimed that this profit should be deducted in favor of the manufacturer, and as his proper profit as such, in determining what are the profits derived from the use of the patent.

In this view of the case, the master has caused a deduction of twenty per cent to be made from the sum of $19,676.85, leaving the sum of $16,405.91 as the amount to which the plaintiff is entitled as the share belonging to her, it being one half of the income or profits derived from the use of the patent. To the amount as thus found due from him, the defendant objects, as being a much larger sum than that which he should be compelled to pay for the use made by him of the patent; and contends that the master has not adopted any proper basis on which the liability of the defendant should be computed.

According to the report of the master, the defendant contended that "the amount of the net income and profits from the manufacture and sale of said goods, and the use of said letters patent," were to be distinguished each from the other, and the master was therefore to inquire, first, "the net income and profits from the manufacture and sale of said goods, embracing both manufacturer's and patentee's profits;" and secondly, "the net income and profits from the use of the letters patent, or what are termed patentee's profits;" the latter being the excess of profits "over the average, usual, and customary profit obtained by the manufacturer of unpatented articles." The defendant contends,

by his sixth exception, that this is not a fair statement of his position, but no evidence is offered of this. The master's report finds the contrary, and this is final. When, in the same exception, the defendant restates his contention, it is as follows: " that the whole net income and profits included both manufacturer's profits and the net income and profits from the use of the patent, and that the latter obviously could not be more than the difference between the usual and customary manufacturer's profits and the whole net income and profits." The defendant then contends that, in view of certain evidence stated, the net income and profits were merely nominal.

It is much insisted on, throughout the defendant's argument, that he had not succeeded in impressing on the mind of the master that the plaintiff was only to recover for the amount of profits derived from the use of the patent, as distinguished and separated from any which might have been made in any other mode from the manufacture and sale of the patented article; but the report of the master shows that he fully understood this, and has properly dealt with it. Nor does the position appear so abstruse or ingenious that it is not readily to be comprehended by any intelligent person upon being stated. The complaint that the master has not found what profits were derived from the use of the patent, is not justified. Whether he has arrived at his result by the true rule, or whether that claimed by the defendant, which he declined to adopt, is correct, is to be considered; but that, by his second finding, he has determined the amount due solely for profits derived from the use of the patent, is clear. The real difficulty which the defendant has with the report is that the master, in determining the amount of profit derived from the use of the patent, did not adopt the claim made in the fourth exception, as well as in the argumentative portion of the sixth; which was, that evidence should be examined as to the manufacture of certain competing chains, the prices at which they were made and sold, the profits made thereby, and also evidence that the patented chain was not essentially superior, and ascertain and determine thereby that no more than a nominal profit had been derived from the patent. This evidence, as offered, afforded no adequate means of comparison, and was properly disregarded. The article manufactured by others was, even

if similar, still different from that manufactured by the defendant. Even if there was no actual advantage in the article made by the defendant, the value of such an article, purely ornamental, deriving a large part of its value from its mere fashion, for the purpose of sale may have been much greater. In the case at bar, the quantity of the patented chain made and sold by the defendant, the price at which it was sold, and the cost of its manufacture, were determined by agreement of parties. Whether it was better or worse than competing chains, or what effect they had in regard to the sale, or what profits the manufacturers thereof made, were not important inquiries.

The recovery of profits, or rather the mode of ascertaining them in patent suits, appears to have been found one of considerable difficulty in suits against infringers. When the patent is for a process in making an established article, and a definite saving is thus made in the process of manufacture, this saving may properly be the guide as to the profits. *Mowry* v. *Whitney*, 14 Wall. 620, 653. But the patent in the case at bar was for a product, and not for a process or machine for making a product. It was an improved chain link, made in a way and form described, which could be readily connected with other links so as to form an "ornamental chain for jewelry." That it was of a different structure and fashion from the Nevins chain, which it most nearly resembled, the defendant himself testified, although he states that the difference in style and appearance is but little, and that, at a little distance, they could not be distinguished. Proof that the Freeman chain was really not more valuable than the competing chains made by other manufacturers has no bearing upon the inquiry as to the profits made by the defendant by the use of the patent.

If this were a suit against an infringer of a patent by the owner thereof, the rule appears to be well established, that the profits from the use of the patent would be fairly ascertained by finding the difference between the cost of the articles produced and the amount received from the sales thereof. In estimating the cost, all the elements which go to make up the expenditures in the manufacture and sale are to be taken into account. "Profit," says Mr. Justice Swayne, "is the gain made upon any business or investment, when both the receipts and payments

are taken into account." *Rubber Co.* v. *Goodyear*, 9 Wall. 788. In the same case, any and all claims for manufacturer's profits were rejected. In *Elizabeth* v. *Pavement Co.* 97 U. S. 126, the defendants, who were infringers of a patent for the manufacture of a wood pavement, in the computation of profits with which they were to be charged, claimed a profit of twenty per cent in addition to the actual cost of the lumber and other materials and labor. "It is only necessary to state the claim," says Mr. Justice Bradley, "to show its preposterousness." Were the rule against infringers adopted in the case at bar, it is obvious that the first computation made by the master was correct; as in the cost of the chains, which he finds to be thirty-two cents a foot, he has included every necessary expenditure of their manufacture and sale, and has awarded to the defendant as compensation for his personal services six per cent on the sales. It is in the power of the United States court, in suits against an infringer, to award damages in addition to profits, as well as to give the patentee a remedy in damages, if he has been caused injury by the infringement of his patent, even if the infringer has derived no profit from the use of the invention. *Elizabeth* v. *Pavement Co.*, *ubi supra*. The rule, as against infringers, has been held very strongly, in order that neither directly nor indirectly should any advantage be gained by them, and it has been deemed that to allow even the profits ordinarily made by a manufacturer would be a premium on dishonesty, and an invitation to aggression. *Rubber Co.* v. *Goodyear*, *ubi supra.*

We do not think the circumstances of this case such as to require an allowance of them to be here excluded. The defendant was the owner of all the assets of the partnership which formerly existed between himself and the plaintiff's intestate, except this patent. They had carried on the business of making ornamental chains under it, and it remained a partnership asset after the sale by which the defendant became possessed of the other assets. He was requested to sell and dispose of it; his right to use it was denied, but he continued to manufacture under it. He can certainly obtain no personal advantage by the use of a partnership asset, which he was bound to manage or dispose of for the best advantage of the partnership estate, which,

as surviving partner, he was to administer. *Freeman* v. *Freeman*, 136 Mass. 263. The plaintiff, by her bill, claims to be "entitled to one undivided half part of all the net profits derived from the use of said letters patent;" and demands that they be paid over to her. To the profits derived from the use of all the other assets of the firm, the defendant was fairly entitled. The use of this partnership asset was certainly not justified, yet the case is distinguishable from one in which the defendant is found to have embarked in an enterprise necessarily involving an injury to the rights of patentees. He continued to conduct a business already in existence, using therein an asset which had theretofore been used, and which belonged to the partnership. Although conducted for his own benefit, if the advantage he derived from such use is fairly ascertainable, in a suit brought for the plaintiff's half of the net profits thereof, he should not be deprived of the profits attributable to the manufacture of the article in which no assets but his own were embarked. While a trustee or quasi trustee, such as a surviving partner, is to make no profit out of the trust estate, it cannot be said that the whole profits found by the master were those of the asset which the defendant held in trust, when, if he had made an unpatented article of the same general description, there would have been a profit thereon of twenty per cent.

The defendant contends that actual profits can only be recovered, and that these must be definitely shown by the plaintiff. But these are to be shown, as in ordinary cases, by the exhibition of facts from which they can fairly be inferred, such as the difference between the cost of the articles and the price for which they are sold. Indeed, when these show a large apparent profit in the manufacture and sale of an article under a patent wrongfully used, it would seem that the natural order of proof would require that the defendant should show that it was made in other modes, or from other causes, than the use of the patent.

We are, for the reasons above stated, of opinion that the mode of computation adopted by the master in his second finding correctly states the damages which the plaintiff is entitled to recover.

The defendant contends that the moderate sum for which the patent was sold, at the sale under direction of the master, namely, $1050, shows that the amount charged against him as profits was grossly exaggerated. No such inference can fairly be drawn. The patent had but a few years to run, and it is more than probable that the profitable use of it was well exhausted. It was for an article of fashion in jewelry, and the examination of the accounts shows, as might be expected, that after a few years the sales rapidly diminished.

It is to be considered whether the plaintiff is entitled to interest as computed by the master, or only from the date of this proceeding. The master has, at the conclusion of each year, given to the plaintiff simple interest on the profits of that year to the date of his report. If the defendant had used an article of a definite and permanent value in his business, it would appear that the plaintiff might either demand the fair interest on such value, or the profits which had been made by its use, but he could not expect both. If he had possessed himself of funds belonging to the firm, to her proportion of which the representative of his partner was entitled, and, against the remonstrance of the latter, had mingled them with funds properly his own, the party injured might demand compensation for the use thus wrongfully made of the funds misappropriated, by charging him with full interest thereon. He might do so also where the party thus in possession of funds unreasonably neglected and refused to settle his accounts. *Dunlap* v. *Watson*, 124 Mass. 305. Where, in a similar case, the party injured demands to share the profits which have been made by the use of her funds, she ought not, in addition thereto, to recover interest thereon.

In the case at bar, no settlement was ever made at the end of the year, nor any sum then found due which should thereafter stand to the credit of either partner. Whether the apparent balance was used, or to what extent it was used, in the subsequent operations, cannot be determined. It may well have been of benefit in these subsequent operations, and thus have increased the profits subsequently made. If the plaintiff receives, without interest except from the date of filing the bill, her full share of the profits made by the use of the patent as

found by the master, irrespective of "manufacturer's profits" and the costs and expenses as allowed to the defendant, she will receive all to which she is entitled.

The general rule, as applied both to trustees and to surviving partners whose relation is fiduciary, and who have wrongfully used funds in the prosecution of a business, is that the party injured may have either the profits actually made, or interest on the funds so used. *Macdonald* v. *Richardson*, 1 Giff. 81. *Brown* v. *De Tastet*, Jac. 284. *Wedderburn* v. *Wedderburn*, 22 Beav. 84. *Crawshay* v. *Collins*, 2 Russ. 325, 348. *Washburn* v. *Goodman*, 17 Pick. 519. The patent used in the case at bar had not a definite money value. The plaintiff seeks only to be compensated by the share of the profits made from its use belonging to the estate of her intestate. To calculate the profits annually, and to add interest thereon, in the absence of evidence that such profits were or could be annually set aside and invested elsewhere, would not be just to the defendant.

The result therefore is, that the plaintiff is entitled to recover the smaller sum found due by the master, as one half of patentee's net income and profits, namely, $16,405.91, with interest thereon from the date of this proceeding.

This is in addition to the half of the amounts collected, and to the half of the property taken at an appraisal by the defendant, to the findings of the master in regard to which there was no exception.

The plaintiff will be further entitled to an order upon the master to pay over to her one half of the net proceeds of the sale of the letters patent.               *Decree accordingly.*