STATE STREET TRUST COMPANY & another, trustees, *vs.* DAISY B. WALKER & another.

Essex.   November 16, 1926. — May 21, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Trust,* Trustee's accounts, Trustee's duty as to investments. *Negligence,* Of trustee.

At the hearing of a petition by two trustees, one a trust company and one an individual, under a will which directed the trustees to keep the trust fund invested "in good mortgages of real estate, having greater regard to the goodness of the security than for the amount of income to be derived therefrom," for the allowance of accounts covering a period from 1910 to 1923, it appeared that the trust company was appointed a cotrustee in 1902 and that the individual was appointed a cotrustee with it in 1918; that in 1892 predecessor trustees had made an investment of $10,000 in a mortgage maturing in 1897 and through their neglect the investment had been permitted to stand until 1902; that then the security, by reason of obvious changes in the character of the neighborhood, had decreased to the value of $8,000; that the next year an agent of the trust company had informed it that the mortgage ought not to exceed $5,000; that in 1898 the mortgagor had made an assignment for the benefit of his creditors; that from then until 1912, the interest was paid by a third party who to the knowledge of the trust company died in 1913 and from whose estate the trust company was unable to collect the mortgage note; that the trust company made no effort to collect or to reduce the mortgage until 1913, when it was foreclosed and the trust company took title; that after foreclosure the trust company was not negligent, and afterwards recovered $6,700 of the principal; that the trust company had taken no steps to have its predecessor and cotrustee charged with the loss that the trust had suffered under their management; that at the time, in 1918, of the appointment of the individual trustee, petitioner, the entire loss on account of the investment had been sustained, and that he had taken no steps to have the trust reimbursed.   By order of the judge, a decree was entered charging both petitioners in the account with the loss on account of the principal of the investment.   The petitioners appealed.   *Held,* that,

(1) The safety and preservation of the investment were paramount; the amount of interest received was merely of incidental importance;

(2) The proximate cause of the loss having been found to be due to the failure of the trustees preceding the trust company to foreclose while the security of the mortgage was ample, they were jointly and severally responsible for the loss;

(3) A finding by the judge that such trustees failed to comply with the directions in the will of the testator was justified by the facts reported;

(4) The trust company was chargeable with the loss on the principal;

(5) There being no basis for a finding that the individual trustee was negligent in any particular, he was not chargeable with any of the loss.

An allowance by the judge to the individual trustee of $81 for travelling expenses due to the fact that when appointed he was a resident of this Commonwealth but later became a resident of the State of Illinois, was *held* to rest in the discretion of the judge under G. L. c. 215, § 45; and his finding that such allowance was reasonable and proper must stand.

In the circumstances above described, it was proper to charge the trustee trust company with interest at five per cent, the rate of the mortgage, from the date when interest was last paid on that investment, upon the principal sum as reduced at different times when sales of the mortgaged land were made by the company.

PETITIONS by State Street Trust Company and Leslie W. Millar, trustees under the will of Samuel A. Walker, late of Nahant, for the allowance of their twenty-ninth to thirty-seventh accounts, inclusive, covering a period from October 1, 1910, to and including September 30, 1923.

The petitions were heard by *Dow*, J. Material facts found by the judge are stated in the opinion. Besides the findings there quoted were the following:

"In arriving at the amount with which the trustees are charged in the decree on account of principal I have charged them with $10,000 and have credited them with the total receipts from sale of the property after the foreclosure and have disallowed the various credits which they have asked for on account of their expenses in handling and selling the property after the foreclosure. . . .

"In the decree the trustees are not charged with income on the investment after June 16, 1912. If they should be so charged I find that the decree should be amended by adding interest on $10,000 at five per cent from June 16, 1912, to June 24, 1915, amounting to $1,511.10 and on $7,500 from June 24, 1915, to September 12, 1923, amounting to $3,083.34 less $857.14 received from rents accounted for to the beneficiaries while the property was in the hands of the trustees after the foreclosure, making the total income with which the accountants would be chargeable $3,737.30."

By order of the judge, a final decree was entered in accordance with the findings above described, increasing Schedule C of the thirty-seventh account by $3,382.01, all of which was added to the shares to be distributed to the respondent children of A. R. Walker, a son of the testator.

The allowance to the petitioner Millar for personal travelling expenses, referred to in the opinion, was $81.65, which was due to the fact that when he was appointed trustee he was a resident of Newton in this Commonwealth but later became a resident of Wilmette in the State of Illinois.

Schedules D and E of the accounts were not altered by the decree, and no addition to the share of the respondents on account of the lost interest described in the judge's findings was included in the decree.

Both the petitioners and the respondents appealed.

The case was argued at the bar in November, 1926, before *Rugg*, C.J., *Braley, Crosby, Pierce,* & *Sanderson*, JJ., and afterwards was submitted on briefs to all the Justices.

*A. W. Blakemore* & *T. Eaton*, for the petitioners.

*F. W. Bacon*, for the respondents.

RUGG, C.J.   Samuel A. Walker, who died in 1880, by the fourteenth clause of his will gave the residue of his estate to trustees, with directions well and securely to "invest the same as soon as may be done, and keep the same so invested, in good mortgages of real estate, having greater regard to the goodness of the security than for the amount of income to be derived therefrom, and with full authority to loan the same upon mortgage as aforesaid at less than the legal rate, if they deem it necessary or expedient, and also with full power to change investments from time to time as they see fit."

In December, 1892, Charles T. Russell and Joseph B. Russell, who were then the trustees, invested $10,000 of the trust fund in a mortgage given by one Witherell on real estate to secure a note of that sum with interest at five per cent payable semiannually, the principal becoming due on December 16, 1897.   At that time (1892) the district in which the mortgaged real estate was situated was a high class, single house residential district, and the mortgage was a

proper investment for the trustees to make. At about that time the neighborhood began to change to a tenement house district. By 1902 such change had made obvious progress, but the trustees made no effort, so far as shown by the evidence, to collect the mortgage when it became payable or later, until foreclosure proceedings hereinafter mentioned. In July, 1898, the mortgagor made an assignment for the benefit of his creditors.

Charles T. Russell having deceased, Charles T. Russell (formerly junior) was appointed trustee to act jointly with Joseph B. Russell on March 16, 1896. On November 24, 1902, the State Street Trust Company was appointed trustee to act jointly with Joseph B. and Charles T. Russell. In December, 1902, Joseph B. Russell resigned, and on September 28, 1903, Charles T. Russell having died, one Walker was appointed trustee to act jointly with the State Street Trust Company. Walker resigned in 1918, and on December 2, 1918, Leslie W. Millar, one of the accountants, was appointed to act jointly with the State Street Trust Company. Accounts were regularly filed, many of which were allowed, showing the Witherell note and mortgage as an investment at the value of $10,000. The first account joined in by the State Street Trust Company was the twentieth, allowed on January 5, 1903, in which the accountants charged themselves, among other investments, with the Witherell note and mortgage at a value of $10,000. Upon its appointment the State Street Trust Company appears to have taken possession of the securities and property of the trust and thereafter to have had the active management of the business of the trust. In 1903 the agent of the trust company examined the real estate secured by the Witherell note and mortgage, appraised the real estate at $8,000, and stated as his opinion that the "mortgage ought not to be over $5000." There was no evidence that after the State Street Trust Company received the report of its appraiser any effort was made to collect or reduce the amount of the Witherell mortgage.

After the assignment made by Witherell in 1898, one Bradford paid the interest on the mortgage until June 16,

1912.  The mortgage note was not indorsed by him, and the trust company was informed of his death in 1913.  Efforts to collect the note of Bradford's estate were without success. On August 7, 1913, the trustees foreclosed the mortgage and by mesne conveyance took title to themselves.  They then endeavored to sell the property.  A portion of it was sold, apparently in 1915, for $2,500, and the remainder finally disposed of, apparently in September, 1923, for $4,200.  It has been found that there was no negligence on the part of the trustees in attempting to dispose of the property after the foreclosure in 1913.

The following further facts have been found: At the time of the appointment of the State Street Trust Company as trustee in November, 1902, the real estate securing the Witherell note had so shrunken in value that it was worth only $8,000, and the trust had thus suffered a loss by reason of the reduced value of said property.  "I find that this loss was made by reason of the neglect of the trustees, Charles T. Russell and Joseph B. Russell and that the State Street Trust Company accepted the Witherell mortgage upon its appointment as cotrustee as a proper investment without investigation and took no steps to have its cotrustees charged with the loss that the trust had suffered under their management. I find that the State Street Trust Company after its appointment and after it had the report of" its real estate appraiser in 1903 "took no steps to protect the interests of the trust until Bradford stopped paying interest in December, 1912, and that during that period the mortgaged real estate still further depreciated in value. . . . At the time of the appointment of said Millar as trustee [December 2, 1918] the entire loss on account of the Witherell mortgage had been sustained. Said Millar has taken no steps to have the trust reimbursed." The probate judge in arriving at the amount with which the trustees were to be charged on account of principal charged them with $10,000 and credited them with the total receipts from sale of the property after foreclosure, and disallowed the various credits which they asked for on account of expenses in handling and selling the property after foreclosure.

It was the duty of the trustees to exercise reasonable skill, prudence and judgment in their management of the trust. The decline in value of the real estate covered by the Witherell mortgage had begun before the maturity of the note, and this condition could have been discovered by the exercise of reasonable diligence. The safety and preservation of the principal of the investment were paramount. The amount of interest received was merely incidental. The proximate cause of the loss having been found to be due to the failure of the trustees then in office to foreclose, they were jointly and severally responsible for the loss. The State Street Trust Company, if it had examined the securities when it was appointed, could have ascertained the present value of the property, the change in the condition of the neighborhood and the consequent depreciation. The report of its expert called these matters directly to its attention. Whether the delay was unreasonable was a question for the decision of the trial judge, and his finding that the trustees failed to comply with the directions in the will of the testator was justified by the facts reported. If an examination had been made, the negligence of the trustees who took the mortgage, one of whom remained a cotrustee until December, 1902, would have been disclosed and proper measures to compel reimbursement could have been taken. *Childs* v. *Jordan,* 106 Mass. 321. The State Street Trust Company failed to protect the rights of the beneficiaries, according to the findings of the judge, and carried the Witherell mortgage through several accounts at its original value after the shrinkage was known to it, of which the beneficiaries were ignorant. It is therefore chargeable with the investment less the amount received upon foreclosure. The charges for expenses incurred in handling and selling the property after foreclosure were disallowed rightly. *Boynton* v. *Dyer,* 18 Pick. 1, 6. *Blake* v. *Pegram,* 109 Mass. 541, 552. *Forbes* v. *Ware,* 172 Mass. 306. See G. L. c. 206, §§ 4–6.

There is nothing in this record which warrants the requirement that Millar as trustee make up, or share in making up, the loss which has been suffered by the trust. He was not

appointed a trustee until 1918. The entire loss on the Witherell mortgage had been sustained long before that time. It had been converted from a mortgage security into the real estate by the foreclosure in 1913. There is no finding that he has been negligent in any particular. Confessedly there has been no negligence on the part of the trustees since the foreclosure in 1913. Reasonable diligence has been exercised in disposing of that real estate. It has been found that the loss to the trust occurred by reason of the neglect of the Russells and the failure of the State Street Trust Company upon its appointment in 1902 to investigate the propriety of the Witherell mortgage as an investment and to take appropriate steps then to protect the interests of the trust. These events occurred fifteen or sixteen years before the appointment of Millar. An examination by him of the condition of the trust for a period of five years before his appointment would not have disclosed the existence of the Witherell mortgage. The only finding concerning him is that he has made no attempt "to have the trust reimbursed." There is no evidence to show that he could by any efforts have secured a reimbursement to the trust. The order of the court that the trust shall be reimbursed was right, but the entire loss must be borne by the State Street Trust Company and Millar exonerated from personal liability. The Probate Court was also right in holding that the loss of income follows from the loss of principal and that the beneficiaries should also receive simple interest at the rate of five per cent on the amount of the loss. *Boynton* v. *Dyer, supra. McIntire* v. *Mower*, 204 Mass. 233, *Dewey* v. *Burke*, 246 Mass. 435.

The beneficiaries contend that the allowance to Millar, a resident in another State, of certain personal expenses of transportation should have been disallowed. Whether this charge should be allowed rested in the discretion of the judge under G. L. c. 215, § 45, and his finding that it was reasonable and proper must stand.

The findings of the judge as to the interest and the amount to which the trust should be reimbursed are correct.

All the findings of fact are supported by the evidence and

are not shown to be plainly wrong. *Lindsey* v. *Bird,* 193 Mass. 200.

Final decree is to be modified in accordance with this opinion and as modified affirmed.

*Ordered accordingly.*