EDWARD C. BALL & others, trustees, *vs.* EDMUND BALL HOPKINS & others.

Middlesex.    March 4, 5, 1929. — July 10, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Trust,* Duty of trustee, Investments, Accounting. *Interest. Corporation.*

Although a transaction effected by a trustee will not be avoided merely on the ground that he is personally interested therein, his first duty is to protect the interests of the trust estate and he cannot derive a personal benefit from the transaction at the expense of the trust estate.

The will of one who had been a member of a partnership and who died in 1909 provided for the establishment of a trust, the income thereof to be paid to the testator's widow for life. At her death a part of the principal was to be paid to the testator's heirs at law, and the income and principal of the balance was to be paid at certain times to a grandson of the testator, who was then a minor. Under the partnership articles, the surviving partners had the right to purchase the testator's interest. The testator's widow was appointed executrix. She was then a woman nearly seventy years of age, in poor health, and with little previous experience in business transactions and no accurate knowledge of the financial affairs or standing of the partnership. In negotiating a sale of the testator's interest, she relied entirely on a nephew of the testator, who was one of the surviving partners, and on their attorney. The nephew was appointed trustee under the will. He was aware, in his subsequent dealings with the widow, that the testator had placed trust and confidence in him. To accomplish such sale, the partnership was incorporated. Part of the common and preferred stock was issued to the nephew personally. The purchase price for the testator's share was paid partly in preferred stock of the corporation and partly with a mortgage on certain land previously owned by the partnership. Such preferred stock and mortgage thereafter were held by the nephew as trustee. The terms of the sale were authorized by a decree of a probate

court, and the price was adequate. The preferred stock was entitled solely to an annual dividend of five per cent. Such dividends were paid until 1922, when the stock was retired. The mortgage was discharged the same year, interest having been paid thereon. During the years previous to 1922, the corporation earned large profits, in part through the use of the trust funds invested in the preferred stock and the mortgage. By reason of his ownership of common, as well as of preferred stock, the nephew personally derived a benefit from such profits greatly in excess of the dividends and interest received by him as trustee on such investment of the trust funds. The grandson became of age in 1921, having had no guardian during his minority. The widow, who died in 1924, had not been informed of such profits. Her final account as executrix had been duly allowed. She had assented to the first few of the trustee's accounts. In proceedings for the allowance of the trustee's subsequent accounts, it was *held*, that

(1) On all the evidence, a conclusion, that the widow and other parties beneficially interested in the trust had not consented to the terms of the sale of the testator's interest in the partnership "with full and complete knowledge of the facts," was not plainly wrong;

(2) In the circumstances, the trustee was guilty of a breach of his fiduciary duty as trustee by confining the investment of the trust funds to the preferred stock and taking common stock for himself, because he thereby derived a large benefit personally while receiving as trustee merely the dividends paid on the preferred stock;

(3) The trustee was accountable to the beneficiaries of the trust for all the advantage he thereby gained for himself at the expense of the funds held by him as trustee; he was not, however, chargeable with benefits received by the other holders of common stock through the investment of the trust funds in preferred stock;

(4) The mortgage did not appear to have been an improper investment and any benefit which may have accrued to the trustee individually thereby should be eliminated in computing the amount for which he was accountable;

(5) The facts, that the widow as executrix had made the sale of the testator's interest, that the sale had been made under the authority of a probate court, that the widow had assented to some of the trustee's accounts and that her own account as executrix had been allowed, did not bar either her personal representative or the other beneficiaries of the trust from contesting the trustee's later accounts;

(6) The beneficiaries of the trust, since they had elected to seek a share of the profits realized by the defendant, were not entitled also to interest on the amount for which the trustee was accountable.

The corporation above described was capitalized for $150,000. There was evidence that its actual invested capital was $212,000. In computing the sums for which the trustee was accountable, the judge of probate fixed a ratio between the money of the trust invested in the corporation and $150,000. *Held*, that there was no error in the judge's computation; he properly could have found that the actual invested capital was $150,000.

In computing the profits earned by the corporation above described, the

judge of probate deducted salaries paid to the trustee and another as officers of the corporation. Such salaries had been fixed by its board of directors and had been assented to by such officers. *Held*, that the judge could not be required to deduct a larger compensation: a contention by the trustee, that allowance should be made for profits attributable to the officers' personal services and that "for this purpose the nominal salaries actually received by them should be disregarded," was without merit.

PETITIONS, filed in the Probate Court for the county of Middlesex, seeking the allowance of certain accounts of the trustees under the will of Carlos E. Ball, late of Malden.

The accounts covered the years 1909 to 1925, except from May 1, 1912, to May 1, 1913. The petitions were heard by *Harris*, J., a stenographer having been appointed under G. L. c. 215, § 18. Material facts and a final decree entered by order of the judge are described in the opinion. Edward C. Ball, the surviving trustee, appealed.

*J. G. Palfrey*, (*N. B. Vanderhoof & T. Eaton* with him,) for Edward C. Ball.

*A. N. Hunt*, for Malden Trust Company, trustee.

*A. H. Wellman*, (*S. H. Wellman* with him,) for Freelon Q. Ball, executor.

*J. F. Neal*, for Edmund Ball Hopkins and another.

CARROLL, J. This is an appeal by Edward C. Ball, one of the accountants in the matter of certain accounts of the trustees under the will of Carlos E. Ball, deceased, from a decree charging the accountants with items of income and principal of the trust estate.

Carlos E. Ball, hereafter referred to as the testator, died January 10, 1909, leaving a widow, Elizabeth W. Ball, and a grandson, Edmund Ball Hopkins, a minor. The testator gave the residue of his estate to Edward C. Ball, William Leavens and Frederick H. Page in trust to pay the income to his widow during her life; at her death one third of the estate was to be divided among the testator's heirs at law with the exception of the grandson, to whom was to be paid the income of the remaining two thirds until he arrived at the age of twenty-five, when one half of the principal was to be paid him, and he was to receive the balance of the principal when he reached the age of forty. The widow was ap-

pointed executrix. She died in April, 1924. Leavens and Page, the co-trustees, have died.

The testator was a member of the firm of Conant, Ball and Company, chair manufacturers at Gardner. Edward C. Ball, his nephew, and Charles C. Brooks were the other members of the firm. The testator had a half interest, Edward C. Ball a one-third, and Brooks a one-sixth interest in the business. The articles of partnership provided that on the death of a partner the surviving partners had the right to purchase the share of the partnership. In order to exercise this right the surviving partners were to give written notice of their election to purchase to the executor of the deceased partner within thirty days of the appointment of the executor. If they were unable to agree upon the price to be paid for the share of the deceased partner, the value was to be determined by arbitration.

At the hearing in the Probate Court in 1925–1926 the accounts were opposed by Edmund Ball Hopkins. In 1926 Freelon Q. Ball as executor of the will of Elizabeth W. Ball, Edmund Ball Hopkins, the Malden Trust Company (the trustee appointed to succeed the trustee Ball who had resigned) and Edwin M. Wolley, guardian *ad litem* for the minor children of Edmund Ball Hopkins, moved for a rehearing, which was granted. The administrator *de bonis non* with the will annexed of the estate of Carlos E. Ball was admitted as a party respondent. At the hearing in 1927 the judge found that the surviving partners of the testator' elected to purchase his interest in the partnership; that being financially unable to comply with the stipulations in the partnership articles they organized a corporation known as the Conant Ball Company to accomplish the purchase. This corporation was capitalized at $150,000, represented by three hundred shares of common stock and twelve hundred shares of preferred, at a par value of $100 each. All the common stock, with the exception of three qualifying shares, was held by Edward C. Ball and Brooks in the proportion of seven twelfths by the former and five twelfths by the latter. Of the preferred stock five hundred and twenty shares were held by Edward C. Ball and six hundred and eighty shares

by the trustees under the will of the testator. The preferred stock was entitled to an annual dividend of five per cent and no more; it had no voting power.

The price for the purchase of the partnership interest of the testator as finally agreed upon by the surviving partners, the executrix, and her counsel Hamilton and Eaton, was $152,040.42. This payment, according to the judge's finding, was provided for by cash payments of $15,000 each by Edward C. Ball and Charles C. Brooks, by a cash payment of $22,040.42 from the partnership surplus, by the purchase for $32,000 of the testator's half interest in Gardner real estate (which price was secured by a mortgage at five per cent on the entire tract), and by the issue to the trustees of six hundred and eighty shares of the preferred stock in the new corporation. It was found that the purchase price of the partnership interest of the testator was adequate. Dividends on the preferred stock were paid, as was the interest on the mortgage except for the period between February 1 and October 20, 1909. In 1922 it was voted to retire the preferred stock by payment in full, and in November of that year the mortgage was discharged.

During the negotiations preceding the sale of the partnership interest to the corporation, the only advisers of Mrs. Ball were Edward C. Ball and Messrs. Hamilton and Eaton. Ball testified that two years before the death of the testator the latter "spoke to . . . [him] about putting a lot of confidence in . . . [him], and putting everything in . . . [his] hands," saying, "I know you will do the same by my widow as I would do by yours." The firm of Hamilton and Eaton began to render services for Edward C. Ball and Charles C. Brooks in connection with the organization of the company on the date when "they began to form the corporation." The judge found that Hamilton and Eaton organized the Conant Ball Company corporation "and, ever since its organization have been its general counsel"; that the widow at the time of the negotiations was sixty-eight or sixty-nine years of age with no accurate knowledge of the business of Conant, Ball and Company; that she consulted Hamilton and Eaton on four or five occasions after her husband's death

and prior to the formation of the corporation on May 19, 1909; that Edward C. Ball consulted with Hamilton and Eaton "a great many times prior to May 19, 1909." It was also found that Mrs. Ball was not in good health and had not been engaged in business transactions except the affairs of the household for at least forty years.

At the death of the testator the surplus representing the earnings of the several partners remaining in the business was $189,990.02, of which amount $122,040.42 was due the testator. The profits of the corporation from 1910 to 1924 were $843,340.34; the dividends paid during this period amounted to $435,100 on the common stock and $83,700 on the preferred. In February, 1922, it was voted to retire the preferred stock of the corporation. In February, 1923, a stock dividend of four hundred per cent, payable to the common stockholders, was declared. The decree recited that while the trust fund was invested in the preferred stock the corporation derived profits from the use of this fund in excess of the dividends paid; that the preferred stock was retired after large profits had been realized therefrom which enured in part to the profit of Edward C. Ball without the knowledge or consent of all the persons interested therein; that the corporation realized from the land mortgaged profits in excess of the interest paid thereon, without the knowledge or consent of all the parties interested; and it was decreed that the beneficiaries were entitled to all the income and principal earned by the trust fund while invested in the preferred stock and in the mortgage.

1. The judge found it was not a fact that the parties beneficially interested consented to the sale of the testator's interest in the partnership to the corporation on the terms agreed "with full and complete knowledge of the facts." This finding, as well as all his findings of facts, is to be given due weight; his decision, depending on the oral evidence of witnesses who testified before him, is not to be reversed unless plainly wrong. *Corkery* v. *Dorsey*, 223 Mass. 97, 100. *Witherington* v. *Nickerson*, 256 Mass. 351, 354.

An examination of the reported evidence does not show that the judge was plainly wrong. Edward C. Ball was

familiar with the partnership business. He was one of the surviving partners of the testator. He knew that the testator reposed trust and confidence in him in his dealings with the testator's widow. He accepted the position of trustee. The widow lacked experience in the business, she relied on the trustee. She was entitled to independent advice with full information of all the important facts, before consenting to the transfer of such a large share of the estate and consenting to its investment in the preferred stock. As one of the surviving partners Edward C. Ball stood in a fiduciary relation to the beneficiaries. It was his duty to obtain for the benefit of the executrix the best price possible, and this duty was paramount. *Denholm* v. *McKay*, 148 Mass. 434. *Dewey* v. *Chapin*, 156 Mass. 35. As the trustee under the will, his first duty was the protection of the trust estate. No self interest could conflict with this responsibility. He could not derive any personal advantage at the expense of the trust, and could not put himself in a position antagonistic to the interests of those whom he represented, even if the price were adequate. *Morse* v. *Hill*, 136 Mass. 60. *Hayes* v. *Hall*, 188 Mass. 510. *Quinn* v. *Burton*, 195 Mass. 277, 279.

2. If a trustee deals fairly, openly and in good faith, a transaction in which he is personally interested will not be avoided. *Warren* v. *Pazolt*, 203 Mass. 328, 340. *Colburn* v. *Hodgdon*, 241 Mass. 183, 191. But no advantage could be taken of the parties beneficially interested, by misrepresentation or concealment of any important fact, and they must be in a position to understand the nature and effect of the contract. *Brown* v. *Cowell*, 116 Mass. 461. The burden of proof was on the trustee to show this and to show that the contract was advantageous to the person for whom he was acting. *Witherington* v. *Nickerson*, 256 Mass. 351, 356.

3. It was found as a fact, as we construe the findings of the judge, that Mrs. Ball did not consent to the sale with full and complete knowledge of the facts; she relied entirely on Ball, the trustee, and the attorneys, who were also acting for the surviving partners in the formation of the corporation and who since that time have been its general counsel. The investment of such a large part of the estate in the preferred

stock would not ordinarily be considered a prudent investment. Although this investment turned out to be safe, the making of it tends to show, in connection with the other facts in the case, that the trustee was neglecting the trust property for his own advantage. Mrs. Ball, because of her physical condition and lack of knowledge of business, was entitled to independent and discreet advice before engaging in such an enterprise. There was no evidence that she was informed of the profits the partners were making with the money of the estate; it did not appear from the findings that she "was or was not given sufficient data to enable her to make calculations for herself in connection with the business," and it was not clear that she was shown the balance sheet of the partnership before the formation of the corporation or before the completion of the sale. In addition to this there was evidence that the preferred stock had no market value in 1909, and that a banking house would refuse to underwrite $120,000 of preferred stock in a corporation with assets of $150,000. See *Kimball* v. *Whitney*, 233 Mass. 321; *Dickinson, appellant*, 152 Mass. 184, 187. Considering all the evidence, the decision of the trial judge cannot be said to be plainly wrong. See in this connection *Bowen* v. *Richardson*, 133 Mass. 293; *Hawkes* v. *Lackey*, 207 Mass. 424.

4. Furthermore, Edmund Ball Hopkins, who was interested in the remainder, was a minor and was not represented in the transaction. He became of age in 1921, and during his minority he had no legal guardian. *Denholm* v. *McKay*, *supra*, page 443. *Bennett* v. *Pierce*, 188 Mass. 186.

5. The decree provides that the beneficiaries are entitled to all income and principal earned by the trust fund while invested in the preferred stock and in the mortgage note of the Conant Ball Company. The decree was warranted so far as it concerned the preferred stock. In our opinion, however, it was wrong in including the mortgage as a part of the trust investment for which the trustees were chargeable with the money earned by this mortgage, in addition to the interest paid on the mortgage note. We assume that this mortgage was given in 1909. It was given to pay the purchase price of the share of the testator in the real estate in

Gardner. In October, 1910, $7,000 was paid on this mortgage. The amount then due on it was $25,000. The assessed value of the real estate covered by the mortgage was $37,900, and the value of the premises as carried on the books of the partnership before the death of the testator would appear to be either $76,689.35 or $50,700. The mortgage was taken by the vendor of the real estate as a means of selling property which it might have been difficult to turn into cash if purchased by one who was not the owner of the business. In all the circumstances, the mortgage could not be held to be a bad investment, and it should be eliminated in estimating the profits of the trust fund. The vendor was sufficiently informed concerning the mortgage and there was nothing to show that profits, as they appear in the decree in excess of the dividends paid, were received from the mortgage. The profits should be estimated on the basis of $68,000, that is, the amount invested in the preferred stock of the corporation.

The investment in the preferred stock was not a proper investment, and the beneficiaries are not precluded from contesting the accounts on the ground that this investment was authorized by a decree of the Probate Court. *Bennett v. Pierce, supra.* On this point the accountant relies on *Farquhar* v. *New England Trust Co.* 261 Mass. 209. That case is not in conflict. Neither the estate of Mrs. Ball nor the remaindermen are barred by the conduct of Mrs. Ball in assenting to the allowance of the first five accounts of the trustee or by her own accounting as executrix. *Bennett* v. *Pierce, supra.* Upon all the facts the decree in so far as it considered the preferred stock a part of the trust fund was not erroneous.

6. The contestants contend that the issuance of the preferred stock to the beneficiary was a breach of trust; that when retired the preferred stock was worth more than $100 a share; and that the preferred stock had the right to participate in the stock dividend. The judge found, in effect, that the preferred stock was not retired for the purpose of preventing it from sharing in the stock dividends. This was a question of fact; we see no reason why the finding should

be disturbed. Because of this finding and the view which we take of the case, it is unnecessary in our opinion to consider the question whether preferred stock is entitled to share proportionally with common stock in a stock dividend, in the absence of an agreement to the contrary or a statutory provision restricting the participation. See *Page* v. *Whittenton Manuf. Co.* 211 Mass. 424; *Continental Ins. Co.* v. *United States*, 259 U. S. 156; *Jones* v. *Concord & Montreal Railroad*, 67 N. H. 234; Machen, Modern Law of Corporations, § 569.

7. Edward C. Ball contends that it was error to charge the accountants with profits. It has been held in some cases where an investment has been disallowed that the trustee is to be charged with the amount of the investment with interest. *State Street Trust Co.* v. *Walker*, 259 Mass. 578, 584. But this rule does not in all cases prevent the beneficiaries of a trust from recovering profits where trust funds have been used by the trustee in his business. It was said in *Bowen* v. *Richardson, supra*, at page 296: "The rule is general and fundamental, that no person holding trust funds can be allowed to derive any personal gain or advantage, either directly or indirectly, from the use thereof, but he must manage them with a single eye to the advantage of the trust estate; and, if he assumes to use them in any manner for his own benefit or in his own business, he must account for all the profits arising from such use, if profits are made, or for the principal and interest, in case of loss. The persons interested in the trust estate have the option of taking the profits, or of taking interest. This rule is applicable to every kind of fiduciary relation . . . . It is also applicable to every mode in which such trustees may either directly or indirectly seek to derive a personal gain or advantage from the use of trust funds, whether by using the same in their personal business, or by treating the same as a loan to one or more or all of themselves, either with or without security, or to their partners, or to a firm of which they are members, or otherwise. Whatever form the transaction may assume, the salutary rule must be enforced which forbids them from reaping a personal profit from the method which they adopt of investing or managing the trust estate." In our opinion this rule is appli-

cable here. The trustee in using the trust funds for the corporation sought indirectly, if not directly, to gain a personal advantage and profit for himself. We construe the finding of the judge to mean this. He found: "The result of this transaction was that Mr. Ball, of his own motion, as trustee, imposed limitations and restrictions upon the fund held by him in trust which precluded those entitled to the income from receiving all that their money earned . . . . If there were any such justification for a trustee, who was himself impartial and disinterested, entering into such arrangement it would not apply to a trustee who himself should profit personally thereby. And such is the situation in this case." *Flockton* v. *Bunning*, L. R. 8 Ch. App. 323, note.

8. The fact that the executrix of the will of Carlos E. Ball sold the testator's interest in the partnership to the trustees and consented to take the stock in payment does not, under all the circumstances disclosed, prevent the beneficiaries from securing the profits which the trustee gained for himself by the transaction. We do not think that in the case at bar the principle laid down in *Vyse* v. *Foster*, L. R. 8 Ch. App. 309; L. R. 7 H. L. 318, is inconsistent with what is here decided.

9. The accountant further contends there was error in comparing the trust capital with the par value of the capital stock of the corporation; that, for the purpose of determining the profits which the contestants should receive, the ratio must be determined by the trust capital on the one hand and the total invested capital on the other. The method pursued in ascertaining profits was substantially this: The total investment of the trust estate amounting to $100,000, made up of the $68,000 of preferred stock and the $32,000 mortgage, was first considered. The earnings of the corporation were then taken into account, deducting taxes, interest and dividends paid the estate. The profits were then apportioned according to the capital stock of the corporation, $150,000, the resulting fraction being 100/150. One contention of the accountant is that the proper comparison should be with the actual invested capital; that the actual invested capital was $212,000 and the fraction should be 100/212 instead of 100/150. We find no error in the method pursued by the judge

of probate in ascertaining the profits, assuming that the actual capital was the basis of comparison, see *Robinson* v. *Simmons*, 146 Mass. 167, 176; this was a question of fact; and while there was evidence indicating that the actual invested capital was greater than $150,000, we cannot say as matter of law that the judge was wrong. The corporation was capitalized at $150,000, and he could have found that this was in fact the real value. There was, however, error in the method adopted of ascertaining the share of the profits the beneficiaries should receive. This error arose from the fact that the total investment of the trust estate was taken at $100,000, made up of $68,000 of preferred stock and the $32,000 mortgage. As we have said, the $32,000 mortgage was not an improper investment on all the facts, and it should be eliminated in considering the amount of the trust share in the profits of the business. This share in the profits should be calculated on the basis of an investment of $68,000, instead of an investment of $100,000. Furthermore, the accountants are to be charged only with the share of the profits received by Ball alone from the trust fund. The profits received by other stockholders are not in this accounting to be charged against Ball. This question is considered under paragraph 12.

10. The accountant asked for the ruling that, if the trustee was chargeable with any profits, those profits should be determined after due allowance for profits attributable to the personal services of Edward C. Ball and Charles C. Brooks, "and for this purpose the nominal salaries actually received by them should be disregarded." This ruling was refused. It appeared that from 1909 to 1917 the salaries were fixed by the board of directors; after that date the salaries were increased. In an accounting between partners allowance is to be made for the skill and services of the surviving partner. *Robinson* v. *Simmons*, *supra*. The salaries of Ball and Brooks we assume were deducted in ascertaining the net earnings of the corporation. They agreed, it could have been found, to the salaries actually fixed by the board of directors of the corporation they controlled. The judge was not required to allow them greater compensation, even if there was

evidence to show they were fairly entitled to an increased salary; and we do not decide that there was such evidence. Furthermore, the rule in *Robinson* v. *Simmons, supra,* giving an allowance for services to a surviving partner, applies only when the good faith and fairness of the surviving partner are not impeached. We do not understand the rule to be applicable where such partner uses the trust fund for purposes of his own and in violation of his trust.

11. In the statement of findings it appeared that the executor of the will of Mrs. Ball was entitled to income in an amount equal to such proportion of all the net earnings of the corporation during the time its preferred stock was held by the trustees "as the amount of capital from time to time held by the trustee bears to the entire capitalization less the five per cent dividends already paid . . . that the remaindermen are entitled as principal, to the same proportion of the accumulated and undistributed earnings of the corporation at the time the preferred stock was bought in by it." In the final decree, the accountants were charged with $124,305.24 balance of dividends due the estate of the life beneficiary, Mrs. Ball, and were charged with $132,930.25, the balance of earnings not distributed which were due the remaindermen. On this branch of the case the accountant contends that the entire charge for dividends and undistributed earnings is income, and since it accrued during the life of the life tenant, "her estate is entitled to the whole unless otherwise barred." The life tenant and the remaindermen did not contest the decree, they did not appeal, and apparently are satisfied with the decision made. Edward C. Ball alone appealed. Strictly speaking, the accountants are not interested in the question whether the undistributed earnings are treated as income or principal, this concerns only the life tenant and the remaindermen. But we think the judge was right in his ruling on this point. He sought to make an equitable distribution of the earnings, and apparently followed the rule of *Minot* v. *Paine,* 99 Mass. 101, that a stock dividend in a corporation was capital as between the life tenant and remainderman. See in this connection *Kinmonth* v. *Brigham,* 5 Allen, 270; *Westcott* v. *Nickerson,* 120 Mass. 410.

12. As we construe the decree, it was directed that, in substitution of the charge made, the accountants should be charged with the sum of $124,305.24, the balance of dividends due the estate of Elizabeth W. Ball, with interest, and also be charged with the sum of $132,930.25, the balance of earnings not distributed, with interest, as due the remaindermen, so that, in ascertaining the amount due the estate of Mrs. Ball, the entire dividends received by all the stockholders exclusive of the trust stock were considered, without reference to the amount received by the trustee; and the same principle was followed in deciding that the amount of the undistributed earnings belonged to the remaindermen. This method of computation left out of consideration the amounts received by the other stockholders, the Brooks family. They were not parties to the proceeding and were not before the court. The judge was passing on the accounts of the trustees; the conduct of Ball alone could be passed on, and he could be required to pay to the beneficiaries of the trust what belonged to them by reason of his acts. He is accountable for the share of the profits attributable to the trust funds which came into his hands, and cannot be charged with profits received by the other stockholders. "To make him answerable for all the profits made of such money by all the firm would be simply a punishment." *Vyse* v. *Foster*, L. R. 8 Ch. App. 309, at page 333. *Jones* v. *Foxall*, 15 Beav. 388. The charge made cannot be supported in this proceeding on any theory of a joint liability of Edward C. Ball with Brooks. Assuming Ball and Brooks were jointly liable, and we do not decide this question, in the settlement of the accounts of Ball, he should be charged to the extent that he was enriched by the trust fund. The preferred stock was treated as a trust share, and if Ball were the only stockholder the trust could be awarded the proportionate share of the profits that this share bore to the whole investment in the corporate adventure. But this computation could not be adopted when Ball was not the only stockholder.

13. The accountants were charged with interest on the profits due the estate of Elizabeth Ball, and with interest on the undivided profits belonging to the remaindermen. In

*Dunlap* v. *Watson*, 124 Mass. 305, one of the partners on the dissolution of the firm settled its affairs. He received rents and dividends on shares in a corporation owned by the partnership. The plaintiff, a partner, in 1857 demanded a settlement, and continued his demands until 1869 when the suit in equity was begun. It was held in that case that, after the debts were paid, it was the defendant's duty to account; if he mingled the money of the firm with his own or neglected unreasonably to settle his accounts, he was chargeable with interest. In *Freeman* v. *Freeman*, 142 Mass. 98, 105, it was held that a party seeking profits could not recover the profits and interest on these profits. In our opinion this principle is applicable here. This is not a case where a surviving partner, engaged in winding up the partnership, appropriates to his own use all the assets and refuses on demand to make a settlement of the money received. Here the contestants are claiming to share in the profits of a business, because of the misuse of trust funds and their investment in the business, where no settlement was demanded and the misuse of the funds continued for years without objection; the beneficiaries were entitled to interest or profits at their election, but they were not entitled to both. "Where . . . the party injured demands to share the profits which have been made by the use of her funds, she ought not, in addition thereto, to recover interest thereon." *Freeman* v. *Freeman, supra.*

We do not consider it necessary to discuss the question raised by the contestants as to the legality of the issue of the preferred stock.

The decree was wrong in allowing interest on the profits received and in computing the profits on the basis of the entire earnings of the corporation instead of computing them on the basis of Edward C. Ball's share in the profits; it was also wrong in including the mortgage of $32,000 as a part of the trust fund entitled to share in the profits. The decree is to be modified accordingly and when so modified is to be affirmed.

*Ordered accordingly.*