GRAFTON L. DULANEY against the Petitioner and for Complainants.

---

SAMUEL ELLICOTT, JR. ET AL.
vs. } JULY TERM, 1850.
THOMAS ELLICOTT ET AL.

[CHANCERY PRACTICE—LAW OF DESCENTS AND DISTRIBUTIONS.]

PARTIES having conflicting interests, each claiming the title to the property in dispute to be in himself, cannot unite as plaintiffs, and a bill containing an averment that one of the plaintiffs is entitled, and that if he is not his co-plaintiff is, cannot be supported.

The proper mode by which such an objection to a bill can be taken advantage of, is by a demurrer.

Where a party dies intestate, and without issue, leaving an uncle and the children of uncles and aunts his next of kin, his whole estate, real and personal, by the act to direct descents of this state, descends to, and becomes the property of the uncle, to the exclusion of his other relatives.

---

[The complainants in this case, were Samuel Ellicott, junior, Elias Ellicott, Philip T. Ellicott, John A. Ellicott, Andrew Ellicott, Andrew Ellicott, jr., Benjamin Ellicott, Benjamin H. Ellicott and George Ellicott, all children of uncles of the whole or half blood of Charles T. Ellicott, deceased, whose property is the subject of controversy in this suit, and who died without issue, leaving the defendant, Thomas Ellicott, his uncle, and the complainants, and others, children of his deceased uncles and aunts, his sole next of kin, surviving him. All the remaining facts of the case necessary for an understanding of the opinions of the Chancellor, are therein stated.

The first opinion upon the application of the Union Bank to be made plaintiffs instead of defendants to the bill, was delivered on the 3d of October, 1848, during the September term of the Court.]

THE CHANCELLOR :

In September, 1843, the complainants, Samuel Ellicott and others, filed their bill in this court, making a number of persons, and the president and directors of the Union Bank of Maryland, parties defendants.

The complainants charged, that a paper purporting to be the last will of Charles T. Ellicott, executed in July, 1831, and another paper purporting to be a deed executed by him in February, 1832, were fraudulent and void, for the reasons stated, and the bill prayed that these papers might be declared to be void, and that a certain other paper executed by the same party in December, 1834, and also purporting to be his last will, and under which the complainants were entitled to parcels of his estate, might be established as such, their rights ascertained and determined thereunder, or that the court might decide upon the rights of the complainants, and the other parties in interest, as the same might be affected by the law of descents.

The bill also alleged that the title of the defendant, Thomas Ellicott, whatever it might be to the real property in question, had been sold and conveyed by the sheriff to the Union Bank of Maryland, under executions from Baltimore County Court, against the said Thomas Ellicott.

The plaintiffs, then, attacking the first will and deed of Charles T. Ellicott, upon the grounds stated in the bill, and relying upon the second will, or upon the law of descents, if both wills should be adjudged to be void, ask for relief accordingly.

Answers have been filed to this bill, by the defendants, in which the validity of the impeached instruments is maintained, and proofs are now in process of being collected upon the one side and the other.

At this stage of the cause, the Union Bank of Maryland filed their petition on the 24th of May last, in which they state,

41

that being defendants upon the record, it is doubted whether they are in a position to have their rights adjudicated, and a decree passed in their favor, in case they should, upon the hearing, be held entitled to the property ; and they, therefore, pray, that an order may be passed, striking out their names as defendants, and making them plaintiffs, and treating them in the further progress of this cause as occupying that position.

The assent of the complainants having been given to this amendment, an order passed accordingly on the same day.

Afterwards, on the 28th of the following month, three of the defendants filed their petitions, in which, upon the grounds therein set forth, they prayed that the order of the 24th of May might be rescinded, and that the bank should be required, in the prosecution of its claims, whatever they might be, to proceed in the usual mode, and according to the course of the court.

An order then passed for a hearing of the application, and counsel have been heard accordingly.

The object of the bill, as we have seen, was to set aside the first will and deed of Charles T. Ellicott, and that the second will might be established, or, in case the court should consider and pronounce all these instruments invalid, that then, and in that case, it should decide upon the rights of the parties as they might be regulated by the act of descents.

The questions thus presented by the bill, are entirely different from any claim which the Union Bank may have in virtue of the purchase by it, at the sale made by the sheriff, of the interest of Thomas Ellicott.

The plaintiffs charging that the first will and deed are void, upon the ground of the mental imbecility of Charles T. Ellicott, and the imputed frauds of Thomas Ellicott and William M. Ellicott, found their title to portions of the property, first, upon the second will, and secondly upon their right, as heirs at law, if all the instruments should be found to be invalid, and this was the case, which the defendants, who insist upon the validity of the first will and deed, had to meet.

The right of the bank, as founded upon the purchase of the title of Thomas Ellicott, is directly antagonistic to the title set up by the bill. All the pretensions of the complainant must be overthrown, before the bank's title can be set up, and if, therefore, the bank had joined in the bill as a complainant, the allegations must have been, not that the complainants were jointly or severally entitled, but that one or the other was entitled, and the question therefore is, whether parties having interests thus conflicting can unite in the same bill. That is, can a plaintiff say that I am entitled to the property in controversy, but if I am not, my co-plaintiff is?

In this case, it is manifest that if the parties who filed the bill, are entitled to recover, the Union Bank is not, and that if the latter is, the former are not, and they, therefore, must have said, if they had united in the same bill, that they or the bank, was entitled. This would have made it, in some respects, like the case of *Cholmondely* vs. *Clinton,* in 11 *Cond. Eng. Ch. Rep.*, 62, in which *Lord Eldon* said, that if "that was the nature of the record, it was a record quite singular and quite different from any he ever recollected, that two persons can come into this court, and say the title is either in me or you, each contending it is in himself, and bring before the court a defendant," and he asks, "is this the course of the court?" He further observed, that *Lord Redesdale's* opinion as declared in the house of lords, was, that a bill in equity with such an averment, could not be supported.

In the absence of opposing authority, and none has been produced, the opinion of *Lord Redesdale,* sanctioned, as it clearly seems to be, by that of *Lord Eldon,* must be regarded as conclusive.

But there are other objections to this application, on the part of the bank, growing out of the stage of the cause at which it is made. The answers have been filed, and commissions are out, under which it is understood a good deal of proof has been collected.

Now, by delaying the application until after the answers were filed, the defendants may be deprived, if the application

is successful, of objecting to the union of these parties, as plaintiffs, in the mode in which, perhaps, alone, it can be resisted, that is by demurrer. That was the mode in which the objection was presented in *Cholmondely* vs. *Clinton*, and it appears to be settled, that if the parties having interests several and distinct, sue together, as co-plaintiffs, the objection must be taken by demurrer. *Story's Equity Pl.*, sec. 544; *Watertown* vs. *Cowen*, 4 *Paige*, 510. But, if the court, upon granting the application of the bank, should allow the defendants to withdraw their answers and demur, then the delay and expense already incurred, might have been avoided, if the bank had made its motion at an earlier period of the cause. If the application now made, is successful, parties situated as the bank is with regard to this case, may not choose to assume the relation towards it of a plaintiff, nor the responsibility for costs, which that relation may involve, until the proof has all been taken, and the probable fate of the controversy can be anticipated.

If in this case the bank is allowed to become a co-plaintiff, nothing can be fairer, and indeed it is understood to be conceded, that the defendants may answer anew, and thus new issues will be presented, and it may be, new evidence will become necessary. All this independently of the objections resting upon the high and controlling authority of *Lord Redesdale*, is very objectionable, and, therefore, I am of opinion, the motion must be refused, and shall so order.]

The following opinion upon the merits was delivered on the 11th of July, 1850, during the July term of the court.

THE CHANCELLOR:

The evidence in regard to the mental condition of Charles T. Ellicott, at the period of the execution of the will of July, 1831, and of the deed of February, 1832, is contradictory and inconclusive, and, therefore, if it was absolutely necessary to decide upon the validity of those papers, upon the ground of his incapacity to dispose of his property, it is quite probable,

the result of a careful examination of the proof would be adverse to the pretensions of the plaintiffs.

But, as the case stands, the court is relieved from the obligation of instituting such an examination, because, whether those papers stand or fall, the plaintiffs can make out no title to the relief prayed by their bill.

If the will and deed of 1831 and 1832 are adjudged to be void, on account of the mental incapacity of Charles T. Ellicott to execute them, the proof is very strong to show, that the paper called the will, executed in December, 1834, is still less entitled to be treated as a valid and operative instrument, the entire current of the evidence demonstrating, that the intellect of the party signing it, was more infirm then, than when the two first papers were executed. In truth, this could not be otherwise, when the progressive effect of the principal cause of his imbecility is considered, a cause, which increased in intensity and force as the unhappy victim of it grew older.

If the deed of 1832 is free from objection, then it follows, that the plaintiffs, who claim, under the will of 1834, have no title, because, all the property of the grantor passing under the former, there was nothing for the will to act upon. If, on the contrary, all these instruments should be pronounced void, and if the first two meet with that fate, unquestionably, the last cannot escape condemnation, then it follows, that the parties are remitted to their rights as heirs at law of Charles T. Ellicott, and since the decision of the Court of Appeals in the case of *Porter* vs. *Askew*, 11 *Gill & Johns.*, 346, it is clear, beyond dispute, that the whole estate, real and personal, of the intestate, descended to, and became the property of, Thomas Ellicott, the uncle of the deceased, to the exclusion of his other relatives, and that he, and he alone, under our act, to direct descents and statute of distributions, is the only person interested in his estate.

The bill charges, and there has been some effort to prove, that the two first instruments were procured by the undue influence and control of Thomas Ellicott over his nephew. But the complainants, I think, have entirely failed in establishing

41*

this allegation, and, therefore, assuming the mental capacity of Charles T. Ellicott, to dispose of his property, the deed must operate upon it.

From these views, it follows, the plaintiffs have no title, and their bill must be dismissed.]

———

S. Teackle Wallis, John Glenn, and Reverdy Johnson for Complainants.

J. Pennington, T. P. Scott, Wm. Schley for Defendants.

———

[No appeal was taken in this case.]