LOUIS LEVENE *vs.* PETER H. CROWELL & others.

Suffolk.   December 4, 1922. — January 5, 1923.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Broker,* Commission.   *Contract,* What constitutes.   *Evidence,* Extrinsic affecting writings.

At the hearing by a judge without a jury of an action for a broker's commission for having procured a sale in January, 1918, to an Italian corporation of a majority of the shares of the capital stock of an American shipping corporation, it appeared that all parties concerned in the negotiations, both principal and agents, were fully aware that under 39 U. S. Sts. at Large, 730, § 9, no such sale could be consummated without the approval of the United States Shipping Board, and that none of them contemplated making such a sale without such approval.   An offer of sale was submitted in writing by the American corporation to the Italian corporation and a formal acceptance in writing by the Italian corporation was appended thereto and these writings were given into the possession of the Italian corporation's agent.   With relation thereto, the Italian corporation's agent testified that he told representatives of the broker that he "could not accept definitely this offer unless" he "got the permission from the Shipping Board," and that he "would like to see" its president — to go to Washington "to get first the permission from the Shipping Board."   A representative of the American corporation testified that he did not put this condition in the contract because the representative of the Italian corporation "was very clear and precise, stating . . . as a condition . . . that it should not go into effect, or have any effect, unless he obtained permission from Washington.   That was understood expressly between him and me, and there was no misunderstanding about it."   The Shipping Board never gave its approval. The judge found that the agreement was signed and delivered "on the understanding and condition that it was to be wholly ineffective as an offer, or as an agreement or in any other respect, unless the Shipping Board approved the transfer of the stock."   *Held,* that

(1) The finding was warranted;

(2) The evidence was admissible to show that the writings, in form a complete contract, were delivered conditionally and never became a contract;

(3) The broker never having procured a customer unconditionally ready, able and willing to purchase the shares, a finding for the defendant was warranted.

CONTRACT for $350,000, alleged to have been earned by Nathan J. Packard and Moses Packard, copartners doing business under the firm name and style of Parker and Company, in procuring for the defendants a sale in January, 1918, of eighty per cent of the capital stock of Crowell and Thurlow Steamship Company at

$1,400 per share to Banca Italiana Di Sconto, a corporation of Rome, Italy, the plaintiff alleging that the claim of Packard and Company had been assigned to him. Writ dated January 13, 1919.

In the Superior Court, the action was heard by *McLaughlin*, J., without a jury. Material evidence and findings by the judge are described in the opinion. There was a finding for the defendant; and the plaintiff alleged exceptions.

*L. Marks*, (*C. J. Miller* with him,) for the plaintiff.

*A. C. Burnham*, for the defendants.

PIERCE, J. This is an action of contract by the plaintiff, as assignee, to recover a broker's commission of the defendants for the sale of stock of the Crowell and Thurlow Steamship Company; which commission was earned and the right to receive was completed on January 3, 1918, as the plaintiff alleges, when his assignor found a person ready, able and willing to purchase the stock of the Crowell and Thurlow Steamship Company on the defendants' terms, and one who in fact did execute with the defendants on that day a contract of purchase and sale.

The contract between the assignor and the defendants relative to the commission of the assignor is contained in two letters, which read as follows:

"In accordance with conversation with your Mr. Levenson, Jr., today, it is now understood by us and agreed to by you for Messrs. Packard & Co. of No. 1 Wall St., New York, that in the event of a sale of the stock of the Crowell & Thurlow S/S Co, through the Kirby Coal-Iron-Marine Company, Messrs. Packard & Co. are to receive 2½% commission on all of the stock transferred at $1400.00 per share. By our agreement with you today, as stated above, our letter to Messrs. Packard & Co. of Dec. 18, 1917 is superseded and made void. Kindly confirm this understanding by letter to us, as well as a letter of confirmation from Messrs. Packard & Co. Yours truly, (Sgd.) Crowell & Thurlow as Agts."

"Replying to your favor of December 22nd, 1917 addressed to Messrs. Levenson Bros. of 50 Church Street, New York City in which you state that we are to receive 2½% commission on all of the stock of the Crowell & Thurlow Steam Ship Co. which is transferred at a price of $1400.00 per share. We accept this proposition and in consideration thereof we are returning you herewith your letter to us dated December 18th, 1917 referring

to said commission which last named letter is rendered void by
this present agreement. Yours very truly, (Sgd.) Packard & Co.
N. B. Levenson Bros. hereby confirms and assents to the above
arrangements.    (Sgd.) Levenson Bros."

It appeared in evidence that the only asset of the steamship
company consisted of eight steamships; that the person procured
as a purchaser of the stock purported to act as the representative
and in behalf of the Banca Italiana Di Sconto, a corporation with
residence in Rome, Italy; and that the object to be attained by
the purchase of the stock was the legal control and ownership of
the steamships.

The trial judge found and it is clearly supported by all the
testimony that "the transaction in question involved the sale of
a fleet of steamships to citizens of a foreign government, and the
transfer of these vessels to a foreign registry and flag. The
United States was at war, and by 39 U. S. Sts. at Large, 730, § 9,
creating the United States Shipping Board, adopted September 7,
1916, no vessel registered or enrolled and licensed under the laws
of the United States could be sold, leased or chartered to any
person not a citizen of the United States, or transferred to a
foreign registry or flag without the approval of the Shipping
Board. The vessels of the Crowell and Thurlow Steamship Com-
pany were duly registered under the laws of the United States
and consequently could not be transferred to a foreign flag with-
out such approval. All of the parties concerned in the negotia-
tions, both principals and brokers, were fully aware of this law,
and none of them contemplated selling either the vessels or a
majority of the stock of the corporation without the assent of
the board. It was a matter of frequent discussion, and efforts
which were made from time to time to obtain the board's con-
sent proved fruitless, and ultimately failed, so far as appeared,
through no one's fault. None of the parties interested, the
brokers, the defendants, or the prospective purchasers, contem-
plated that any rights would be fixed or that liability on the part
of any one would attach unless such assent were procured, and
unless certain other conditions were fulfilled . . . nor did any
one consider that there was any practical distinction between
selling a majority of the stock . . . and selling the vessels them-
selves."

Having in mind the necessity of obtaining the assent of the Shipping Board before the vessels of the Crowell and Thurlow Steamship Company could be sold to a person not a citizen of the United States, or transferred to a foreign flag or registry, the defendants and the representative of the Banca Italiana Di Sconto conferred in New York City, with the result that on January 3, 1918, the defendants in a letter addressed to the representative of the Banca Italiana made a proposal or offer to sell to the representative such "shares of the capital stock of the Crowell and Thurlow Steamship Company as may be deposited for transfer, such shares to constitute at least eighty percent of the entire capital stock of the Corporation for the sum of $1400 per share." The representative accepted the offer of the defendants on the day the proposal was submitted to him in terms written and printed on the letter as follows: "I hereby accept the above offer as Representative of and in behalf of The Banca Italiana Di Sconto. It is understood that the D. W. C. tonnage of the 8 ships aggregates 54,600 Tons." As regards the execution of the offer and acceptance, the representative, prospective purchaser testified, as follows:

"Q. And Mr. Warner and Mr. Jones came in on the 3d of January to your office? A. Yes, to my office. I told them I could not accept definitely this offer unless I got the permission from the Shipping Board, and I said I would like to see Mr. Hurley.

"The judge: Who was Mr. Hurley?

"Mr. Burnham (of counsel for defence): Mr. Hurley was president of the Shipping Board."

"Q. You wanted to buy the ships? A. Yes, certainly.

"Q. Mr. Jones would only sell the stock of the corporation? A. Yes.

"Q. And you wanted to go to Washington to see whether the — A. To get first the permission from the Shipping Board."

Mr. Jones, who represented the defendants, testified as regards the above interview:

"Q. You referred to the conditions of making a deposit of the money on the 12th, didn't you? A. No; the agreement of the Shipping Board.

"Q. Why didn't you put that in your little paper? A. Be-

cause Mr. Bragadin [the representative] was very clear and precise, stating that condition himself, as a condition for his putting his name upon that, and for his taking it to Washington, — that it should not go into effect, or have any effect, unless he obtained permission from Washington. That was understood expressly between him and me, and there was no misunderstanding about it."

Upon this testimony the sitting judge found that "the agreement of January 3, 1918 . . . was signed and delivered by the defendants and by Bragadin on the understanding and condition that it was to be wholly ineffective as an offer, or as an agreement or in any other respect, unless the Shipping Board approved the transfer of the stock, . . . The condition as to the approval by the board was not performed; its assent was never given, and therefore the instrument became wholly ineffective." We think the evidence fully supports the finding that it was agreed between the parties at the time the instrument of offer and acceptance was signed that it should not have effect until Mr. Bragadin got the desired permission from the Shipping Board.

Assuming the evidence warranted a finding that the parties to the instrument agreed before its manual transfer, in form a complete contract, that it should not become binding until the happening of some condition precedent resting in parol, the plaintiff contends that the declared intention of the parties to make the delivery conditional should not be admitted in evidence, because to do so would violate the rule of substantive law that evidence of acts and intention before the execution of a written instrument are not admissible to contradict, vary or modify a present and completed contract. He rests the contention upon the statement of Mr. Justice Loring in *Elastic Tip Co.* v. *Graham*, 185 Mass. 597, at page 600: "It is settled that a completed instrument may be shown by parol to have been delivered on a condition which has not been performed;" and he argues therefrom that the term "completed instrument" was used advisedly and that evidence of a conditional agreement before the actual execution of the instrument itself is not admissible. We think the words "completed instrument" in the opinion were used to describe an instrument which in form is complete and would be an executed instrument if it were delivered with an intent that it should take

effect and be operative according to its terms. *Elastic Tip Co.*
v. *Graham, supra,* and cases cited.

The finding against the claim of the plaintiff in this regard
makes unnecessary a consideration of the other exceptions.

*Exceptions overruled.*