HERBERT K. HALLETT & others vs. HAROLD A. MOORE & another.

Suffolk.    May 16, 1932. — March 30, 1933.

Present: RUGG, C.J., WAIT, FIELD, & DONAHUE, JJ.

*Equity Pleading and Practice*, Parties: class bill, intervenor; Bill. *Mortgage*, Of real estate: trust mortgage, reimbursement of trustee for advancements. *Contract*, Construction. *Trust*, Rights of trustee under trust mortgage. *Lien*. *Merger*. *Corporation*, Identity as separate entity.

The plaintiffs in a suit by a committee for bondholders against a trustee who is the holder of a mortgage securing payment of their bonds, if they allege that they bring the suit in behalf of themselves and "such other holders of the bonds as may care to become parties plaintiff," hold and retain absolute dominion over the suit unless and until the court orders otherwise upon findings, made after hearing, that the suit is not being prosecuted in good faith, with vigor and reasonable capacity.

The procedure in such a suit does not contemplate that other bondholders who have instituted different proceedings in their own behalf, based upon divergent allegations and theories of liability on the part of the defendant, shall become parties to the suit and undertake a course of litigation therein altogether at variance with that outlined by the plaintiffs in their bill.

After a committee for holders of bonds of a corporation secured by a first mortgage upon its real estate to a trustee for the bondholders had brought a suit in equity against the trustee, alleging that they brought it in behalf of the plaintiffs and "such other holders of the bonds as may care to become parties plaintiff," for an accounting as to proceeds realized by him from a sale in foreclosure of the mortgage, and it appeared from the defendant's answer that he claimed certain credits from the proceeds for advances made by him to complete a building contemplated by the mortgage, which credits the plaintiffs contended he was not entitled to, a petition by an individual holder of one bond for leave to intervene as a plaintiff for the purpose of contesting such claim of the defendant for credit was allowed with the consent of the plaintiffs. In such petition the petitioner had referred to a suit in equity previously brought by him against those who were the defendant and the plaintiffs in the bondholders' suit and others, but had not incorporated the allegations in that bill in his petition. The allegations and grounds of that bill were antagonistic to those upon which the plaintiffs in the bondholders' suit relied.

Later the intervenor presented a motion to amend his petition to intervene to introduce allegations at considerable length charging the defendant with bad faith in respect to many of his acts connected with the completion of the building, the procurement of the foreclosure of a second mortgage on the property and failure to collect rents and profits from the property for the benefit of the bondholders, and also allegations respecting a suit pending in a Federal court by the defendant against a surety on a bond given by the landowner for completion of the building. The motion to amend was denied as a matter of law by a single justice of this court, who ruled that the motion to amend the petition to intervene raised issues of fact independent of those raised by the bill and answer in the bondholders' suit; that the original plaintiffs therein were *domini litis* and that their control of the proceedings could not be interfered with by the intervenor; that the intervenor must take the record in this class suit as he found it; and that if he desired to raise new issues he must do so by a suit on his own account. *Held*, that

. (1) The original intervening petition introduced no facts new to the bondholders' suit; it was founded merely on an alleged purpose to contest the claim for priority urged by the defendant;

(2) The intervenor by his amendment was attempting to try the bondholders' suit on a different conception of the grounds of liability from that of the plaintiffs in that suit, and in substance and effect was striving to assume control of the suit and to oust the plaintiffs from their control of it;

(3) The rulings by the single justice and the denial of the motion to amend were proper.

A trustee who makes proper expenditures in connection with the trust property is entitled to reimbursement out of the trust property and such claim for reimbursement may constitute a charge superior to the rights of the beneficiaries of the trust.

A corporation owning land, upon which an eight-story apartment house, first class construction, containing one hundred fifty-one suites, was to be constructed, issued bonds and mortgaged its real estate to an individual as trustee to secure payment of the bonds. Provisions of the trust mortgage were that the landowner covenanted to erect such an apartment building upon the land; that the trustee was authorized, whenever the landowner was delinquent in the performance of its covenants, "to perform such covenants . . . to place said mortgaged property in proper condition . . . and to advance or expend the necessary money for any or all of said purposes . . ."; that the landowner covenanted to pay to the trustee "all moneys advanced or expended . . . with interest . . . at seven per cent . . . all of which sums shall be a first lien on said premises prior and paramount to the bonds hereby secured . . ."; that in case of sale by foreclosure of the mortgaged property the proceeds should be applied, after payment of the costs of such sale, to "the payment of all other expenses of the trust . . . including all moneys advanced by the" trustee "pursuant to the . . . terms of" the indenture, with interest; that the trustee was "entitled to be reimbursed for all proper outlays of every sort

and nature, by him incurred in the discharge of said trust," which with other specified expenses should "constitute a first lien on said premises"; and that he "shall not be personally liable for any debts contracted by him . . . but . . . the same shall be a charge upon the trust estate." *Held,* that the mortgage as a whole gave the trustee a right to claim, before payment of the bonds and from the proceeds of a sale in foreclosure, reimbursement for advancements made by him to complete the building after default by the contractor and default by the landowner in performance of its covenant as to such completion.

In an agreement in writing between the landowner above described and a corporation, substantially all of whose common stock was owned by members of the family of the trustee-mortgagee, his father being its president and he its treasurer, the landowner agreed to employ the corporation to sell bonds. The agreement was made previous to the execution of the mortgage to the trustee. A suit by bondholders against the trustee-mortgagee for an accounting as to the proceeds of the sale in foreclosure of the mortgage was heard on bill and answer. The defendant in his answer claimed priority over the bondholders for reimbursement for the advancements above described and averred that the amount claimed was paid in cash by the defendant for the purpose of completing the building and that the money so paid was lent to him by the broker corporation; that in each instance he signed, either in his own name, followed by the words "Individual Trustee" and the name of the landowner, or in the name of the landowner followed by his own name and the words "Individual Trustee," an instrument in form of a note payable to himself which he indorsed and delivered to the broker corporation, receiving checks which were deposited in a bank account in his name as trustee, from which he made the payments to complete the building; that the notes were understood by all concerned to constitute mere memoranda showing the dates and amounts of the various advances; that such advances by the broker corporation were loans to the defendant in his capacity as trustee and not individually; and that he was not to be under any personal obligation to repay them. *Held,* that

(1) Nothing in the other averments of the answer controlled the positive statement that the amount claimed by the defendant was paid in cash by the defendant for the purpose of completing the building and that the money so paid was lent to him by the broker corporation and was not advanced by the broker corporation to the landowner;

(2) In view of all the circumstances the form of the notes was not proof that the landowner and not the defendant was the borrower;

(3) There was nothing in the record to disclose that the defendant was agent for the landowner;

(4) The form of entries on the books of the broker corporation was not of consequence in view of the express averments of the answer as to the facts and intentions of the parties;

(5) The brokerage agreement between the broker corporation and the landowner contained nothing militating against the conclusion

that the corporation lent the money to the defendant for the purpose above stated;

(6) No provision in the mortgage required or even implied that the defendant, if required to expend money under the power conferred upon him by the mortgage, must use his own money exclusively and was forbidden to borrow for that purpose;

(7) The terms of G. L. (Ter. Ed.) c. 244, § 20, and c. 183, § 27, were not relevant to the facts disclosed;

(8) A provision of the mortgage instrument that no purchaser before maturity of the bonds should be affected, as to the lien created by the mortgage, by equities between various other parties including the landowner, the defendant, and the broker corporation did not refer to rights created expressly and in detail by the mortgage in favor of the defendant for the purpose of completing the building, but referred to equities which might arise in other aspects of the undertaking or in other transactions and did not affect the claim of the defendant set up in this suit.

In the suit above described, it further appeared that the landowner had given a second mortgage to a trust company to secure a second issue of bonds; that, at the time of the completion of the building by the defendant, the bonds of such second issue were in default and the corporation which was the broker for the landowner, which had both common and preferred stock, whose common stock was owned by members of the defendant's family, whose president was the defendant's father and whose treasurer was the defendant, bought enough of the second mortgage bonds to enable it to require a foreclosure sale of the second mortgage, at which the property was bought by another corporation, all of whose stock was owned by the defendant's father, of which the defendant was secretary, and which then conveyed the property to a newly organized corporation, all the capital stock of which it owned; that the defendant permitted the new corporation to hold possession for a considerable period; and that by the terms of the first mortgage the defendant was relieved of liability in consequence of allowing the mortgagor or its successors to remain in possession. There were no facts in the record affording evidence of bad faith or fraudulent conduct on the defendant's part in so permitting the new corporation to hold possession, nor that the building on the mortgaged premises was producing revenue at the time nor that the defendant dealt with the property for his personal benefit or in any manner save to preserve the interests of the bondholders. *Held*, that the inference was not established as a fact that the defendant as trustee failed to exercise reasonable skill, prudence and judgment in his management of affairs for the benefit of the bondholders.

In the circumstances above described, the purchase of the property at the foreclosure sale under the second mortgage by the corporation in the circumstances above described and its transfer in a few days to the corporation newly formed did not have the effect of extinguishing by merger the lien of the defendant for his advancement to complete the building pursuant to authority conferred by the first mortgage,

there being nothing to indicate how much of the stock of the broker corporation was owned by the several members of the defendant's family or by the defendant's father or who were the holders of its preferred stock: there was no unity of stock ownership in any two of the corporations and no facts in the record required or justified the inference that the separate identity of the corporations could be disregarded or that they could be treated as the same entity under different names or as a sham to shield the same person or persons.

The circumstances above described did not bring the case within that class where courts look through the corporate form to the individual stockholders in order to protect the public, prevent a fraud, or to accomplish some other essential justice.

The mere circumstances that such money was advanced by the broker corporation to the defendant for the purpose of completing the building, and that the lien for those expenses might ultimately enure to the benefit of that corporation, did not have the effect of extinguishing the lien by merger: no unity of interest was established between the corporation which was the purchaser at the foreclosure of the second mortgage and its grantee, the newly formed corporation, on the one side, and the defendant and the broker corporation on the other side.

In the circumstances, there was nothing inequitable in permitting the defendant to enforce the lien for advancements above described even if it were assumed that the purchaser at the foreclosure of the second mortgage bought subject to that lien, neither such purchaser nor its successor in title having discharged the lien by payment.

An argument by the plaintiffs above mentioned that an action by the defendant against the surety upon a bond given by the landowner to the defendant as trustee, the broker corporation and the bondholders secured by the first mortgage, and conditioned upon completion of the building as specified, would, if the defendant prevailed as plaintiff therein, enable him to recover twice for his advancements, was without merit, because that action and its issues were not before this court and also because the defendant in that action would be required to account as trustee for all sums received or recovered in that capacity.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on June 10, 1931, and described in the opinion.

The building to which the suit refers was an eight-story apartment house, first class construction, containing one hundred fifty-one suites.

The pleadings and the terms of a reservation and report by *Crosby*, J., are described in the opinion.

*T. Hunt*, for the plaintiffs.

*M. Z. Kolodny*, (*J. L. Sullivan* with him,) for the intervenor.

*H. S. Davis,* for the defendants.

RUGG, C.J.    This is a suit in equity brought on June 10, 1931, by a committee for the protection of holders of mortgage bonds of the aggregate face value of $1,200,000 originally secured by a first trust mortgage on real estate in Brookline — both bonds and mortgage having been executed by The Pelham Hall, Inc., and the bonds having been sold through American Bond and Mortgage Company — against the defendant both as an individual and as trustee under the mortgage.   The object of the suit is to obtain an accounting for the proceeds of a foreclosure sale held by the defendant under the mortgage.   It is alleged in the bill that the plaintiffs are owners of more than nine tenths of the entire issue of bonds so secured; that the mortgagor has defaulted in the performance of many covenants contained in the mortgage; that after such defaults the defendant as trustee, in accordance with the terms of the trust mortgage, has taken possession of the real estate covered by the mortgage and has sold it at public auction and has received therefor $450,000; that the bonds are wholly unpaid, and that the amount thus received is in the hands of the defendant for ratable distribution among the holders of the bonds after deduction of certain costs and expenses, all as provided in the mortgage; and that the bill is brought in behalf of the plaintiffs and "such other holders of the bonds as may care to become parties plaintiff."   The prayers are for an accounting and for distribution ratably of the amount in the hands of the defendant among holders of the mortgage bonds, and for further relief.   The defendant's answer admits most of the allegations of the bill, but avers that he is entitled to retain expenses for foreclosure of the mortgage amounting to $7,346.42, and sets up in some detail claims for reimbursement out of the fund in his hands for sums aggregating $181,500 advanced by him as trustee in order to complete the building contemplated by the mortgage, which sums with interest are averred to be due to him under the terms of the mortgage in priority and paramount to the amounts due to the holders of bonds.

Apparently no issue of fact was raised between the original parties to the suit, since, at the request of all parties, the case is to be heard on bill and answer, as amended, provided the contentions of the intervenor now to be stated are decided adversely to him. Thus the plaintiffs contest as matter of law the defendant's claim for priority for his advancements.

After the filing of the original answer, the individual holder of one bond secured by the mortgage filed a "Motion to intervene as Party Complainant" for the purpose of contesting the claim of the defendant to reimbursement in priority to the rights of the holders of bonds for sums advanced by himself in order to complete the building. That motion was allowed, counsel for plaintiffs stating in writing that he made no objection. The petition to intervene alleged that the intervenor with others had instituted a suit in the Superior Court against the defendant and all the persons named as plaintiffs in the bill in the case at bar, and others as defendants including the American Bond and Mortgage Company, and copy of the bill in that suit was annexed to his petition. The intervening petition did not incorporate any of the allegations of that bill; it was founded merely on an alleged purpose to contest the claim for priority urged by the defendant. It introduced no new facts.

Thereafter, the intervenor filed a motion to amend his petition to intervene. In this motion the intervenor sought to introduce allegations at considerable length charging the defendant with bad faith in respect to many of his acts connected with the completion of the building, the procurement of the foreclosure of a second mortgage on the property and failure to collect rents and profits from the property for the benefit of the bondholders. He also alleged the pendency in the United States District Court for the District of Massachusetts of an action by the defendant against the Maryland Casualty Company for breach of the condition of a bond signed by it as surety and given to guarantee the completion of the building by the landowner, for money spent by him in completing the building after the owner and the contractor had failed to do so, and set

out at length the finding of an auditor appointed in that case in the main adverse to that plaintiff, but there are no allegations that there has been a verdict or finding predicated on the auditor's report, or that the case has gone to judgment. .

The single justice ruled that, since the motion to amend the petition to intervene raised issues of fact independent of those raised by the bill and answer, the original plaintiffs were *domini litis* and that their control of the proceedings could not be interfered with by the intervenor, that the intervenor must take the record of this class bill as he found it, that if he desired to raise new issues he must do so by suit on his own account, and as matter of law denied the motion to amend the petition to intervene. At the request of all parties, he reported that ruling to the full court for determination. If that ruling was right, the case is to be heard upon bill and answer.

The first question to be decided is whether there was error in thus denying the motion to amend the petition to intervene.

As bearing upon this question, a brief summary of the allegations of the bill in the suit in equity alleged by the intervenor to have been brought by himself and others in the Superior Court is relevant. That suit was brought on May 1, 1931, by plaintiffs, some of whom were holders of bonds secured by the mortgage described in the present bill. The defendants embraced all the plaintiffs and the defendant in the case at bar, and other corporations and individuals. The allegations of that bill are that the defendant in the case at bar (hereafter called the defendant) entered into a scheme, outlined at considerable length, with the American Bond and Mortgage Company whereby they intended to reap a secret profit at the expense of the bondholders or of the Maryland Casualty Company, that the defendant has been guilty of other fraudulent acts in failing to take possession of the real estate covered by the mortgage, that his interests are hostile to those of the bondholders and that he ought to be removed as trustee, that a protective committee of bondholders having ulterior designs has been formed, and that all the acts of the defendant in connection with the real estate and in fore-

closing the mortgage have been illegal and ought to be set aside as voidable. There are sweeping prayers for temporary and permanent injunctions, for removal of the defendant as trustee, and for other relief. That bill was amended by amendment allowed on August 4, 1931, wherein was set forth the foreclosure of the mortgage by the defendant with the allegation among others that such foreclosure was illegal and voidable.

It is manifest that the intervenor is a participant in prosecuting as a party other litigation hostile to the purpose of the plaintiffs in the present bill and inconsistent with relief here sought, and that by his proposed amendment he is seeking to interject into the present suit issues not hitherto raised and antagonistic to the theory on which this suit is founded. The present suit was properly brought as a class bill by the plaintiffs in their own right and in behalf of other bondholders secured by the same trust mortgage. *Spear* v. *H. V. Greene Co.* 246 Mass. 259, 266–267. It was based on allegations that the mortgage had been foreclosed.

One who brings a suit such as the present holds and retains absolute dominion over it unless the court orders otherwise upon findings made after hearing that it is not being prosecuted in good faith, with vigor and reasonable capacity. There can be but one master of litigation for the plaintiffs. The original plaintiffs assumed the burden of prosecuting the cause to a conclusion and the liability to costs if defeated. It would be impracticable to permit litigation in these circumstances to be conducted by the independent action of several plaintiffs acting without harmony and according to divergent ideas as to the establishment of the liability of the defendant. This is the general rule supported by many authorities. *Handford* v. *Storie*, 2 Sim. & Stu. 196, 198. *Hirshfeld* v. *Fitzgerald*, 157 N. Y. 166, 182–184. *Duerson's administrator* v. *Alsop*, 27 Grat. 229, 236. *Thompson* v. *Fisler*, 6 Stew. (N. J.) 480–481. *Manning* v. *Mercantile Trust Co.* 26 Misc. (N. Y.) 440. *Price* v. *North*, 2 Y. & C. Ex. 620, 628, 635. *Watson* v. *Cave*, 17 Ch. D. 19, 22. 1 Dan. Ch. Pl. & Pract. (6th Amer. ed.) 794. See 21 C. J. 289–290, and cases collected. It is on this principle

that persons taking antagonistic positions with reference to the main purpose of the suit cannot join as plaintiffs. *Cholmondeley* v. *Clinton*, Turn. & Russ. 107, 116. *Ellicott* v. *Ellicott*, 2 Md. Ch. 468, 471. *Hill* v. *Wilson*, 210 Fed. Rep. 200. *Parsons* v. *Lyman*, 4 Blatchf. C. C. 432. See also *Hendrickson* v. *Wallace's executor*, 4 Stew. (N. J.) 604; *Smith* v. *Smith*, 102 Ala. 516. An intervenor as party plaintiff ordinarily must come into the case as it exists and conform to the pleadings as he finds them, although doubtless there are exceptions to this rule. *Booth* v. *State*, 131 Ga. 750, 760. *Ebersbach Construction Co.* v. *Charles Ringling Co.* 100 Fla. 1270. See 21 C. J. 347, and cases collected. Compare *Check* v. *Kaplan*, 280 Mass. 170. The procedure in a class bill on behalf of bondholders having a common interest, who desire to join as plaintiffs, does not contemplate that other bondholders who have instituted different proceedings in their own behalf, based upon distinct allegations and theories of liability on the part of the defendants, shall become parties and undertake a course of litigation altogether at variance with that outlined by the plaintiffs in their bill. *Forbes* v. *Memphis, El Paso & Pacific Railroad*, 2 Woods, 323, 334.

There are many instances where an intervenor comes into pending litigation as an independent party, as for example in receivership proceedings, and is allowed to pursue the course dictated by his own desires. *Check* v. *Kaplan*, 280 Mass. 170, and cases reviewed. *Kingsley* v. *Fall River*, 280 Mass. 395. Parties are not infrequently permitted to intervene where they have a necessary interest to be protected or asserted. *Chase* v. *Dickey*, 212 Mass. 555. *Zani* v. *Phandor Co.* 281 Mass. 139, 146, 148, 149. It is unnecessary to multiply illustrations from the cases of these large classes. The case at bar is distinguishable.

The present intervenor is attempting to try the case on a quite different conception of the grounds of liability from that of the plaintiffs. In substance and effect he is striving to assume control of the suit and to oust the plaintiffs from their control of it. He is a party to a separate suit, where issues which he seeks here to raise appear to be open to him.

The issues raised in that case are in part to the effect that the foreclosure of the mortgage was voidable, while the case at bar rests upon the allegation that it was legal and has produced a fund in the hands of the defendant for distribution among the bondholders. These two positions are antagonistic. Ordinarily a court of equity will not foster by its aid such inconsistent courses of conduct. *Hewitt* v. *Hayes*, 205 Mass. 356, 363–364. *Paris* v. *Sheppard*, 125 Iowa, 255. *Kirkendall* v. *Weatherley*, 77 Neb. 421, 425. Compare *Alpert* v. *Mercury Publishing Co.* 272 Mass. 39; *Alpert* v. *Mercury Publishing Co.* 272 Mass. 43; *Great Falls Manuf. Co.* v. *Attorney General*, 124 U. S. 581, 600. Commonly, plaintiffs in a class bill who desire to press their suit to a conclusion on issues of law, without embarking in an attempt to prove fraud on the part of a defendant, ought not to be compelled to wait while issues of that nature are brought forward by a single intervenor. It would have been almost, if not quite, an abuse of discretion in these circumstances to have allowed the motion of the intervenor to amend. Without emphasizing one fact above another, the collective force of all the circumstances disclosed on this record leads to the conclusion that there was no error in denying the intervenor's motion to amend.

This result in no way impairs the settled principle that courts of equity are sedulous to provide opportunity to be heard for all parties interested in a trust. *Sears* v. *Hardy*, 120 Mass. 524, 529. *First National Fire Ins. Co.* v. *Salisbury*, 130 Mass. 303, 312. *Wickwire Spencer Steel Corp.* v. *United Spring Co.* 247 Mass. 565, 569. That practice is inapplicable to the facts here shown.

The disposition to be made of the case upon the reservation for consideration upon the bill and answer, as amended, remains to be determined. For this purpose, all facts alleged in the bill, so far as not denied in the answer, and all relevant and responsive facts well pleaded in the answer, must be accepted as true. *Joslin* v. *Boston & Maine Railroad*, 274 Mass. 551–552. *Boston* v. *Curley*, 276 Mass. 549, 555. On this branch of the case the controversy relates to the contention of the defendant that he is entitled, in prior-

ity to the bondholders, to reimbursement for $181,500 with interest advanced by him for the completion of the building upon the land covered by the mortgage. The material facts thus shown, in addition to those hitherto stated, are these: The Pelham Hall, Inc., a Massachusetts corporation, in order to raise money to build an apartment house on land owned by it, arranged with the American Bond and Mortgage Company to sell the bonds here involved. Substantially all the common stock of the latter corporation was owned by members of the family of the defendant, his father being president and he himself being treasurer. An indenture of trust in form a mortgage was executed by the landowner, by the defendant as individual trustee, and by the American Trust and Safe Deposit Company as corporate trustee, to secure an issue of bonds aggregating $1,200,000 by first mortgage on the land and building. The landowner executed a second mortgage to the Liberty Trust Company to secure another issue of bonds amounting to $400,000. The landowner also executed a bond in the sum of $500,000, with the Maryland Casualty Company as surety, to secure the completion of the building, the obligees being the defendant as individual trustee, the American Bond and Mortgage Company, and the legal holders of the bonds secured by the first mortgage. The general contractor, who began construction of the building in 1925, became insolvent in 1926 and abandoned the work. There remained to be paid to the landowner out of the proceeds of the first mortgage bonds $125,000, but the landowner was unable to complete the building with that sum. The defendant as trustee made demand of the Maryland Casualty Company as surety on the bond that it complete the building, but it refused. In October, 1926, the defendant as trustee took possession of the building and completed it at a cost of $306,500. Of that amount the $125,000 remaining unexpended from the sale of the bonds was by consent of the landowner turned over to the defendant and applied by him to pay the cost to that extent, and the balance of $181,500 was paid with cash advanced by the defendant as trustee. The cash so advanced was lent to him by the

American Bond and Mortgage Company. In connection with these several advances the defendant signed and indorsed seven instruments purporting to be promissory notes but intended and understood by all concerned to constitute mere memoranda showing the dates and amounts of the various advances, and delivered them to the American Bond and Mortgage Company. The material parts of the notes were: "On demand I promise to pay to the order of Myself          dollars with interest at 6½%          ." The first was signed "Harold A. Moore Individual Trustee The Pelham Hall, Inc.," another, "Pelham Hall, Incorporated Harold A. Moore Individual Trustee," and each of the others, "The Pelham Hall, Inc. Harold A. Moore Individual Trustee." All checks issued by way of such advancements were deposited in a bank account in the name of "Harold A. Moore, trustee," and all of the payments for the completion of the building were made by checks drawn by him or in his behalf on that account. After the completion of the building, the stockholders of The Pelham Hall, Inc., at the request of the American Bond and Mortgage Company, assigned substantially all their stock to nominees of the latter company. At the time of the completion of the building, the second mortgage bonds were in default and the American Bond and Mortgage Company bought enough of them to enable it to require a foreclosure of the second mortgage. At that foreclosure sale, held on May 19, 1927, the property was bought for $50,000 by the American Mortgage Loan Company, all the stock in which was owned by William J. Moore and of which the defendant was secretary. The last named company, on May 26, 1927, conveyed its title to a newly organized Massachusetts corporation — the Pelham Hall Corporation — in which it owned all the stock. This new company was in possession of the property from May 26, 1927, to August 31, 1929, on which date the defendant took possession for the purpose of foreclosing the first mortgage; but it continued to hold title subject to the first mortgage until May 6, 1931, when the property was sold by the defendant under the power of sale contained in his mortgage. Immediately before calling

for bids at this sale, the auctioneer by direction of the defendant announced that the premises would be sold free from the lien claimed by him on account of the advances, amounting to $181,500 as heretofore stated, and that this lien would attach to the proceeds of the sale. The answer sets forth in detail the manner in which the advances for this amount were entered on the books of the American Bond and Mortgage Company, and avers that it was the understanding of all parties that these advances by that company for the completion of the building were loans to the defendant in his capacity as trustee and not individually, and that he was not to be under any personal obligation to repay them.

Not only is a trustee who makes proper expenditures in connection with the trust property entitled to reimbursement out of the trust property but such claim for reimbursement may constitute a charge superior to rights of beneficiaries of the trust. *Woodard* v. *Wright*, 82 Cal. 202, 206. *Turton* v. *Grant*, 86 N. J. Eq. 191, 194. *In re Exhall Coal Co. (Ltd.)* 35 Beav. 449. The defendant does not rely solely upon this principle but relies also upon express provisions of the mortgage. The landowner covenanted in that instrument to erect the apartment building upon the land, of specified dimensions with appointments described in considerable detail. By art. VI the defendant as trustee was authorized, whenever the landowner was delinquent in the performance of its covenants, "to perform such covenants . . . to place said mortgaged property in proper condition . . . and to advance or expend the necessary money for any or all of said purposes . . . ," and the landowner covenanted to pay to the defendant as trustee "all moneys advanced or expended . . . with interest . . . at seven per cent . . . all of which sums shall be a first lien on said premises prior and paramount to the bonds hereby secured . . . ." It was provided by art. IX, § 4 (b), that in case of sale by foreclosure of the mortgaged property the proceeds should be applied, after payment of the costs of such sale, "To the payment of all other expenses of the trust . . . including all moneys advanced by the"

defendant "pursuant to the . . . terms of" the indenture, with interest at seven per cent. By art. X, § 4, the defendant was "entitled to be reimbursed for all proper outlays of every sort and nature, by him incurred in the discharge of said trust," which with other specified expenses should "constitute a first lien on said premises."

These provisions of the mortgage in express terms authorized the defendant to expend sums necessary to complete the building in case of failure on the part of the landowner to complete it in conformity to the requirements of the mortgage. They did not confine him in such expenditures to the amount received from the sale of the bonds secured by the mortgage because, by the words of art. VI already quoted, the sums so advanced by the defendant were to be a "first lien" "prior and paramount to the bonds." A clear distinction is thus drawn between the bonded debt and the debt arising from advances made by the defendant as trustee. These words express an understanding that the total of the two might exceed the amount of the bonds. If any limitation was intended, it would have been stated. The unmistakable purport of this provision in art. VI is that the defendant is entitled to priority over the bonds for advances made by him in accordance with the mortgage. These provisions, in order to be given any effect, must be held to control other terms of the mortgage as to the security afforded to the bonds. The power to create this priority is to be gathered from the mortgage as a whole, attributing due weight to all its parts in order that it may be a consistent and workable instrument. The decision in *Gray* v. *McClellan*, 214 Mass. 92, related to a different matter and is not pertinent to issues here raised.

The averments of the answer are direct and unequivocal to the effect that the amount claimed was paid in cash by the defendant for the purpose of completing the building and that the money so paid was lent to him by the American Bond and Mortgage Company. Those averments standing alone would be decisive in favor of his right to priority for such payments over the bonds.

Nothing in the other averments of the answer controls this positive statement and shows that the money was advanced directly by the American Bond and Mortgage Company to the landowner and not on account of the defendant. The form of the notes is not proof in view of all the circumstances that the landowner and not the defendant was the borrower. The answer states that these so called notes were "intended and understood by all concerned to constitute mere memoranda showing the dates and amounts of the various advances." If and so far as these instruments bear resemblance to negotiable instruments, there is nothing to indicate that they are in the hands of a holder in due course. It is established that in these circumstances an instrument may be shown not to have been intended to create rights or obligations and not to embody a contract, or that it has been delivered on a condition which has not been fulfilled. *Watkins* v. *Bowers,* 119 Mass. 383. *Hill* v. *Hall,* 191 Mass. 253, 265. *Levene* v. *Crowell,* 243 Mass. 441. There is no presumption that these instruments were intended to release any priority or lien otherwise existing upon the facts here shown. *Cary Brick Co.* v. *Wheeler,* 210 Mass. 338, 340. *See* v. *Kolodny,* 227 Mass. 446, 449. The transactions naturally would be assumed to have been intended to secure payment of the advances and not to surrender the valuable right secured by the mortgage to priority for the advancements over the bonds. There is nothing in the record to disclose that the defendant was agent for the landowner. He did not sign as an officer of the landowner. The authority of one to sign notes for another is not to be lightly inferred. *Williams* v. *Dugan,* 217 Mass. 526. The form of the notes does not indicate an execution of them by the landowner through the defendant. They bound the defendant individually so far as form is concerned. *Jump* v. *Sparling,* 218 Mass. 324, 326. *Carr* v. *Leahy,* 217 Mass. 438.

The form of entries on the books of the American Bond and Mortgage Company is not of consequence in view of the express averments of the answer as to the facts and intentions of the parties. They simply show, in view of the other

circumstances, that the advancements were ultimately for the benefit of the enterprise undertaken by the landowner.

Nothing in the so called brokerage agreement militates against this conclusion. The parties to that agreement were the landowner and the American Bond and Mortgage Company. Neither the defendant nor the bondholders were parties to that agreement. It was dated July 7, 1925, and executed shortly afterwards, while the mortgage was not dated until September 1, 1925. It cannot be thought that any provisions of the mortgage were limited or narrowed by the preëxisting contract. Moreover, on the bill and answer, as amended, it cannot be assumed that the American Bond and Mortgage Company was acting under the agreement, in face of averments that the defendant was acting under the mortgage in completing the building.

No provision in the mortgage requires or even implies that the defendant, if required to complete the building in conformity to the power conferred upon him by the mortgage, must use his own money exclusively and was forbidden to borrow for that purpose. It has been held that one acting in a fiduciary capacity may agree in advance that his lien for expenditures made for trust purposes shall enure to the benefit of a third person furnishing money or services thus expended by the trustee. *Schoenherr* v. *Van Meter*, 215 N. Y. 548, 551. *Jessup* v. *Smith*, 223 N. Y. 203. *Field* v. *Wilbur*, 49 Vt. 157, 164. The language of art. VI of the mortgage is of broad sweep. The trustee is authorized, in order to make good a delinquency by the landowner, "to advance or expend the necessary money for any or all" such purposes and the covenant and lien extend to "all moneys advanced or expended pursuant" to the authorization. It is declared, also, by art. X, § 2, that the defendant as individual trustee "shall not be personally liable for any debts contracted by him . . . but . . . the same shall be a charge upon the trust estate." These provisions, in conjunction with the other terms of the mortgage and the main purpose of the entire transaction, authorize the defendant to borrow the necessary money and to incur no personal liability if he acted reasonably.

The right to create a charge upon a trust to obtain money for a necessary purpose without incurring personal responsibility in appropriate instances is established by *King* v. *Stowell,* 211 Mass. 246, 250–251. See *Frost* v. *Thompson,* 219 Mass. 360, 366. *In re Bellinger,* [1898] 2 Ch. 534. *Kiesendahl* v. *Ganoe,* 94 Ore. 283. *Shirkey* v. *Kirby,* 110 Va. 455. The decisions in *Tuttle* v. *First National Bank of Greenfield,* 187 Mass. 533, and *Warren* v. *Pazolt,* 203 Mass. 328, 349, 351, relate to different matters and are not at variance with this conclusion.

The terms of G. L. (Ter. Ed.) c. 244, § 20, and c. 183, § 27, are not relevant to the facts here disclosed and are not imported into the mortgage by anything contained in art. IX, § 4, of the mortgage as a limitation upon the rights and powers expressly conferred upon the defendant.

This right of the defendant to a lien for sums expended in completing the building is not cut down by the provision in art. I, § 6, of the mortgage that no purchaser before maturity of the bonds shall as to the lien created by the mortgage be affected by equities between various other parties including the landowner, the defendant, and the American Bond and Mortgage Company. Manifestly that provision does not refer to rights expressly and in detail created by the mortgage in favor of the defendant for the purpose of completing the building, but refers to equities which might arise in other aspects of the undertaking or in other transactions.

The contention cannot be supported that the defendant committed a breach of duty in permitting the Pelham Hall Corporation to occupy the property for a considerable period. Bad faith is not alleged in the bill and fraudulent conduct cannot commonly be presumed but must be proved. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102, 117. There is nothing to indicate that the building on the mortgaged premises was producing revenue at the time. It was new. It had no established patronage. Time and managerial skill may have been required to organize the staff of such a building, secure tenants, and build up a good will. The defendant in this particular may have

acted with prudence. Moreover, he was relieved by the terms of the mortgage (art. X, § 8; art. XIII, § 8) from liability in consequence of allowing the mortgagor or its successors or assignees to remain in possession. It well may have been the exercise of sound judgment to allow the owner to continue to occupy the property in the hope and expectation that it would become a successful venture and thereby the bonds in fact be given a value commensurate with their face. On this branch of the case the inference is not established that the defendant as trustee failed to exercise reasonable skill, prudence and judgment in his management of affairs for the benefit of the bondholders. *State Street Trust Co.* v. *Walker*, 259 Mass. 578, 583.

There are no facts in the record to support a contention that the defendant dealt with the property for his personal benefit or in any manner save to preserve the interests of the bondholders.

The purchase of the property in 1927 by the American Mortgage Loan Company at the foreclosure of the second mortgage and its transfer in a few days to the Pelham Hall Corporation did not have the effect of extinguishing by merger the lien of the defendant for his advancement to complete the building pursuant to authority conferred by the first mortgage. That ultimate purchaser was a distinct corporation. All its stock was owned by the American Mortgage Loan Company, a separate corporation, whose stock was entirely owned by William J. Moore. The latter was a stockholder in the American Bond and Mortgage Company, also a separate corporation, but there were other stockholders. Although substantially all the common stock of the latter corporation was owned by the Moore family, there is nothing to indicate how much was owned by the several members of the family or by William J. Moore in particular, nor who were the owners of its preferred stock. Thus it appears that there was no unity of stock ownership in any two of these corporations. The defendant was a stockholder in the last named corporation but in neither of the others, and it does not appear how

much stock he owned. There are no facts in the record which require or justify the inference that the identity of the corporations can be disregarded or that they can be treated as the same entity under different names or as a sham to shield the same person or persons. The argument of the plaintiffs seems to us to overlook the fact that these several corporations were not only different legal entities but they were owned by different sets of stockholders. It may be that these several corporations acted in harmony. That was within their legal rights provided they did no actionable wrongs to others. The mere fact that William J. Moore, father of the defendant, was the sole owner of stock in one corporation, which owned all the stock in another, and an owner of stock with others in undisclosed proportions in a third corporation, cannot produce the result that the corporate entities are to be disregarded, treated as one unit, and as identical with William J. Moore. This point is too amply covered by authority to warrant further discussion. *Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Association*, 211 Mass. 398, 403. *Marsch* v. *Southern New England Railroad*, 230 Mass. 483, 498. *Star Brewing Co.* v. *Flynn*, 237 Mass. 213, 217. *Chilson* v. *Mayor of Attleboro*, 247 Mass. 191, 202. *Cannon Manuf. Co.* v. *Cudahy Packing Co.* 267 U. S. 333, 336–337. *Burnet* v. *Commonwealth Improvement Co.* 287 U. S. 415. *Rainham Chemical Works, Ltd.* v. *Belvedere Fish Guano Co. Ltd.* [1921] 2 A. C. 465, 475. *Salomon* v. *A. Salomon & Co. Ltd.* [1897] A. C. 22.

There are instances where courts look through the corporate form to the individuals in order to protect the public, prevent a fraud, or to accomplish some other essential justice. *J. J. McCaskill Co.* v. *United States*, 216 U. S. 504, 515. *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, 337. *Gulf Oil Corp.* v. *Lewellyn*, 248 U. S. 71. But the case at bar does not fall within that class. The facts do not warrant the conclusion that the Pelham Hall Corporation and the American Mortgage Loan Company were not independent entities and free agencies in respect to the property here in question, so far as concerned the defendant or the American

Bond and Mortgage Company. *Hoffman Wall Paper Co. Inc.* v. *Hartford*, 114 Conn. 531, 535. *Berkey* v. *Third Avenue Railway*, 244 N. Y. 84.

The circumstance that the money was advanced to the defendant for the purpose of completing the building, by the American Bond and Mortgage Company, and that the lien for those expenses may ultimately enure to the benefit of that corporation, does not have the effect of extinguishing the lien by merger. No unity of interest is established between the American Mortgage Loan Company as purchaser at the foreclosure of the second mortgage and its grantee, the Pelham Hall Corporation, on the one side, and the defendant and the American Bond and Mortgage Company on the other side. Although merger arises when the title to real estate vests absolutely in the owner of a security without any intervening impediment, the diversity of corporate entities with the other factors already mentioned prevents any merger of the lien of the defendant in the case at bar. *Cheffee* v. *Geageah*, 253 Mass. 586, 589.

It is argued that, because the sale on the foreclosure of the second mortgage was presumably made subject to the lien here in controversy, it would be inequitable to permit that lien now to be satisfied out of the proceeds of the sale under the first mortgage. It cannot be disputed on this record that the money for which the lien is claimed was honestly spent in completing the building. To that extent the holders of the first mortgage bonds, represented by the plaintiffs, were benefited by that expenditure. It does not appear that the defendant or the American Bond and Mortgage Company has ever been repaid for that expenditure. Even if it be assumed that the purchaser at the foreclosure of the second mortgage bought subject to that lien, neither such purchaser nor its successor in title has ever paid it. It is possible that temporarily there may have been some speculative value in the equity thus bought. However that may be, there is now no value to that equity because it has been wiped out by the foreclosure of the first mortgage. We are unable to perceive anything inequitable in permitting the defendant to enforce the lien for advancements in these circumstances.

It has been urged that the action against the surety on the bond which the defendant has brought will, if he prevails, enable him to recover twice for his advancements. That action and its issues are not before us. The argument affords no ground for not allowing the defendant to enforce his lien as claimed in the present suit. It is to be remembered that the defendant is acting in a trust capacity. For all sums received or recovered in that capacity in the present or in any other proceeding, presumably he will be required to account.

The result is that the order denying the motion to amend the petition to intervene is affirmed. The defendant is entitled to establish his lien for the sum claimed for advancements made to complete the building and to be paid for the same as provided in the mortgage, out of the proceeds of the foreclosure sale in his hands, in priority to the claims of the plaintiffs as bondholders. It has not been argued that the defendant is not entitled to be paid for the expenses of the foreclosure in like priority. The details of the decree in conformity to these directions may be settled by the single justice.

*Ordered accordingly.*